No. 51,302

ROBERT F. BRAZELTON, Chief of Police, City of Fairway, Kansas, and CAPTAIN DONALD J. HARPER, Consolidated Fire District 2, Johnson County, Kansas, for Themselves and for All Others Similarly Situated, *Appellees,* v. KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM, *Appellant.*

(607 P.2d 510)

Opinion filed March 1, 1980.

*Kenneth P. Hackler,* assistant attorney general, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for appellant.

S. W. Longan III, of Wilson & Longan, of Kansas City, Missouri, argued the cause, and Donald Patterson, of Fisher, Patterson, Sayler and Smith, of Topeka, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal in a declaratory judgment action by defendant, Kansas Public Employees Retirement System (KPERS), from an order of the district court holding that the 1974 amendment to K.S.A. 74-4965 and the 1975 amendment to K.S.A. 74-4966 were unconstitutional and invalid and enjoining the defendant from enforcing the same.

Plaintiffs, Robert F. Brazelton, Chief of Police of Fairway, Kansas, and Donald J. Harper, a captain on the fire department of Consolidated Fire District # 2, Johnson County, Kansas, filed suit alleging a class action pursuant to K.S.A. 60-223. The district court found the case met the statutory criteria and ordered it maintained as a class action.

The Kansas Police and Firemen's Retirement System (KP&F) was first created by the legislature in 1965, and was to commence January 1, 1967 (K.S.A. 74-4951 et seq.). K.S.A. 74-4953 made KP&F a division of KPERS subject to the provisions of K.S.A. 74-4901 to 74-4926 and any amendments thereto. The purposes of the two acts as set forth in the statutes, K.S.A. 74-4901 (KPERS) and 74-4951 (KP&F), are almost identical. K.S.A. 74-4951 reads:

"**74-4951. Purpose of act.** The purpose of this act is to provide an orderly means whereby police and firemen employed by participating employers and who have attained retirement age or who have become disabled as herein set forth may be retired from active service without prejudice and without inflicting a hardship on the employees retired and to enable such employees to accumulate reserves for themselves and their dependents to provide for old age, disability, death and termination of employment, and for the purpose of effecting economy and efficiency in the administration of governmental affairs."

Prior to January 1, 1976, the effective date of the amendments in question, employees of participating employers had the amount of their contributions to KP&F reduced by the amount of their contributions to social security. K.S.A. 74-4965, before amendment, required each member to pay 7% of his compensation to KP&F but that amount was reduced by the amount the employee paid in social security taxes. During the period from 1967 to 1975 the social security rates ranged from 3.9% to 4.95%. In 1975 an employee's contribution to social security amounted to 4.95% of the first $14,100.00 of gross wages received each year.

Instead of paying 7%, the amount actually contributed to KP&F was 2.05% and 4.95% was paid to social security. Under this system 7% of the employee's salary went to pay for retirement in one form or another.

K.S.A. 74-4966, before amendment, required that KP&F retirement benefits be reduced by one-half the amount received in social security benefits. Each time an increase occurred in social security benefits, the state retirement benefit would have a corresponding reduction equal to one-half of the social security increase. The relationship between the two systems could theoretically result in a member receiving nothing from KP&F if social security benefits reached the point where they were twice as much as KP&F benefits. The 1974 and 1975 amendments were enacted to eliminate the interlocking of KP&F with social security.

The members of the class certified in this case consist of all police officers and firefighters employed by participating employers in KP&F, who, during the period from January 1, 1967 through 1975, contributed funds to both the United States Social Security System and KP&F at a total combined rate of 7% of gross salary. The number of employees making up the class is approximately 425.

After January 1, 1976, under K.S.A. 74-4965 and 74-4966, as amended, a member's contribution to KP&F is 7% of his salary. His contribution is no longer reduced by the amount of contributions to social security, resulting in a reduction of a member's take-home pay by 4.95%. The benefits that the member received from KP&F are, however, no longer reduced by one-half the amount of social security benefits received; rather, each member receives the full benefit of the KP&F retirement system regardless of benefits received from social security.

K.S.A. 74-4965, as amended in 1974 (K.S.A. 1978 Supp. 74-4965), reads:

"74-4965. Member contributions; deductions; disposition. (1) Each participating employer shall, beginning with the first payroll for services performed after the entry date, deduct from the compensation of each member seven percent (7%) of his compensation as employee contributions: *Provided,* That in the case of a member whose employment is covered by social security, the deduction from said member's compensation shall be reduced by the amount of his contributions to social security. *On and after January 1, 1976, no employee contributions shall be reduced because of contributions to social security.* Such deductions shall be

remitted quarterly, or as the board may otherwise provide, to the executive secretary for deposit in the Kansas public employees retirement fund and shall be credited to the member's individual accounts." (Emphasis indicates the 1974 amendment.)

This statute was again amended in 1979 but that amendment is not an issue in this action.

K.S.A. 74-4966 was also amended in 1974 but was again amended in 1975 before the 1974 amendment became effective.

K.S.A. 74-4966, as amended in 1975, (now K.S.A. 1979 Supp. 74-4966), reads:

"**74-4966. Certain reductions of benefits in relation to social security; no reduction upon repayment of certain contributions.** In the case of any member whose employment shall be covered by social security, any benefits payable under the provisions of K.S.A. 74-4958, 74-4959 and 74-4960 shall be reduced by an amount equal to one-half (½) of the social security benefits accruing from employment with the participating employer. *On and after January 1, 1976, no benefits shall be reduced because of social security benefits. Any benefits which first become payable on or after January 1, 1976, by reason of employment with a participating employer participating in the Kansas police and firemen's retirement system, which employment was also covered by social security, shall be reduced by an amount equal to the value of the difference between contributions actually made by the member and contributions which would have been made had there been no reduction for contributions to social security. The amount of reduction shall be made by the board upon the advice of the actuary at the time benefits become payable and shall continue until benefits are no longer payable. Should a member, whose employment prior to January 1, 1976, with a participating employer participating in the Kansas police and firemen's retirement system, such employment also being covered by social security, repay in a lump sum prior to January 1, 1977, or on date of retirement, whichever is earlier, an amount equal to the difference between contributions actually made by the member and contributions which would have been made had there been no reduction for contributions to social security, there shall be no reduction as heretofore provided. If the payment is made after January 1, 1977, but prior to retirement, the member will pay the actual amount plus interest which shall accrue from January 1, 1976, at a rate specified by the board of trustees.*" (Emphasis indicates the 1975 amendment.)

Thus, it can readily be seen that the 1974 and 1975 amendments eliminated the dovetailing or interlocking of social security and KP&F contributions and benefits. Each member's contribution to his retirement was increased by 4.95%. On the other hand, when the employee reached retirement, his Kansas retirement benefits would no longer be reduced by one-half of any social security benefits received. The 1975 amendment to 74-4966 also requires an employee who is a member of plaintiffs' class to make up what the parties and expert witnesses refer to as a "contribu-

tion shortfall." The contribution shortfall for any particular employee is determined by subtracting the actual contributions made to KP&F prior to 1976 from what the contributions for that employee would have been if he had paid a full 7% of his salary for all periods of membership prior to 1976. The statute further obligates the employee to make up or pay this shortfall in one of three ways: (1) by payment of a lump sum without interest prior to January 1, 1977; (2) by payment of a lump sum plus interest at any time between January 1, 1977, and date of retirement, or (3) after retirement by equal monthly deductions from the retirement benefits of the member, such monthly deductions to be calculated on an actuarial basis based upon the employee's age and life expectancy at retirement. Interest is compounded and the rate thereof is set from time to time by the KPERS board of trustees. In the event the shortfall is paid under either (1) or (2), the employee upon retirement receives the full amount of his monthly KP&F benefits. If the shortfall is not paid in a lump sum prior to retirement then payment is effected by a monthly deduction from benefits received after retirement. The monthly deductions continue throughout the entire lifetime of the retired employee even though he outlives his life expectancy and even though the shortfall and interest are completely paid. There is no provision for a cessation in the reduction of benefits after full payment of the shortfall and interest.

KP&F is subject to K.S.A. 1979 Supp. 74-4923 which provides in pertinent part:

"74-4923. **Rights of members and beneficiaries not affected by change or repeal of act, exception; benefits and rights nonassignable and exempt from taxes and legal process; employer recovery of arrearage obligations.** (1) *No alteration, amendment, or repeal of this act shall affect the then existing rights of members and beneficiaries, but shall be effective only as to rights which would otherwise accrue hereunder as a result of services rendered by an employee after such alteration, amendment, or repeal* except that this provision shall not apply to any alteration or amendment of this act which provides greater benefits to members or beneficiaries, but any such increase of benefits shall only be applicable to benefits payable on the first day of the month coinciding with or following the effective date of such alteration or amendment." (Emphasis added.)

Plaintiffs, in the trial court, sought a declaratory judgment that K.S.A. 74-4965 and 74-4966, as amended in 1974 and 1975, were invalid as a violation of their constitutional rights under the United States Constitution and as being contrary to K.S.A. 1979

Supp. 74-4923. Plaintiffs also sought a permanent injunction enjoining the defendants from enforcing and performing under the two statutes as amended. The trial court found that the amendments violated K.S.A. 1979 Supp. 74-4923, were unlawful, created an unconstitutional impairment of the obligation of contracts and therefore were invalid. A permanent injunction was issued prohibiting the enforcement of both the 1974 amendment to K.S.A. 74-4965 and the 1975 amendment to K.S.A. 74-4966. KPERS has appealed.

As stated by the appellant: "Are the 1974 and 1975 amendments to K.S.A. 74-4965 and K.S.A. 74-4966 constitutionally invalid as an unlawful impairment of the obligation of contract?" We might also add: Are they invalid as being in violation of K.S.A. 1979 Supp. 74-4923? We think both questions must be answered in the affirmative.

Neither party to this appeal seriously contends that the rights to pension benefits under KPERS and KP&F are not contractual in nature. *Shapiro v. Kansas Public Employees Retirement System*, 216 Kan. 353, 532 P.2d 1081 (1975). The appellant at the trial level attempted to place some reliance upon dicta in *State, ex rel., v. Board of Education*, 155 Kan. 754, 129 P.2d 265 (1942), wherein the court observed that pension rights granted by public authorities were generally considered gratuities and not contractual obligations. The language in *State, ex rel., v. Board of Education* has been expressly disapproved by this court in *Singer v. City of Topeka*, 227 Kan. 356, ___ P.2d ___ (1980). Over the years a pensioner's rights have gradually evolved from none at all, based upon the theory of gratuity, to contractual or vested property rights. Some states still follow the gratuity theory while at least one (Arizona) has adopted a hard and fast application of the law of contracts. We see no reason to lengthen this opinion with a dissertation on the historical background of the various theories prevailing today. A participating member of KP&F and KPERS does have certain contractual rights based upon the statutes which create the systems and which are a part of the employment contract. Any attempt to define the parameters of such rights in any situation other than that before the court would not only be presumptious and unwise but probably impossible and must be left to subsequent courts to determine on a case by case basis. Suffice it to say that when a person accepts employment with a

governmental entity and becomes a participating member of the retirement system, he or she gains certain rights which may not be eliminated or substantially changed by unilateral action of the governmental employer to the detriment of the member. For example, the right to withdraw contributions under K.S.A. 1979 Supp. 74-4963 and K.S.A. 1979 Supp. 74-4917.

"The concept of pensions has come down through the centuries wearing a cloak of monarchial dispensation. Kings conferred pensions on court favorites, artists and military heroes with a flourish which proclaimed that the royal treasury was as inexhaustible as the crown's power was unlimited. However, despite ceremony and pronounciamento, the pensioner obtained no vested right to the proclaimed pension. In fact, he could not be any more assured of a continuation of the pension than he could be assured that his head would remain on his shoulders if he should displease his absolutist benefactor. But the pension of today is not a grant of the Republic nor in this case is it a gift of the City Fathers. It is the product of mutual promises between the pensioning authority and the pensioner; it is the result of contributions into a fund which exists for the single purpose of pensions." *Hickey v. Pittsburgh Pension Board,* 378 Pa. 300, 304-305, 106 A.2d 233, 52 A.L.R.2d 430 (1954).

Public employment seldom pays as much as a comparable job in the private sector. A pension to be received upon retirement is a prime inducement in securing qualified workers and avoiding the expense of a high turnover rate. Retirement benefits are a valuable part of the consideration for entering into and continuing in public service. A member of a governmental pension system has certain vested rights in the pension plan because it is a vital part of the consideration for entering into and performing under the employment contract. For those interested in pursuing the evolution of the contract and/or vested rights theories of the modern governmental pension plan see Cohn, *Public Employee Retirement Plans—The Nature of the Employees' Rights,* Ill. L. F. 32 (1968); Note, *Public Employee Pensions in Times of Fiscal Distress,* 90 Harv. L. Rev. 992 (1977); Note, *Yeazell v. Copins: Public Employee's Pension Plan Creates a Contractual Right Which May Not Be Impaired During His Employment,* 70 Dick. L. Rev. 524 (1966), and Annot., 52 A.L.R.2d 437.

In the case at bar, the plaintiffs and others of their class had been contributing a total of 7% of their gross compensation to KP&F and social security. The 1974 amendment to 74-4965 required each member of the class to contribute a full 7% of compensation to KP&F without reduction for the amount (4.95% at time of trial) paid for social security. The 1975 amendment to

74-4966 required members of plaintiffs' class to make up the contribution shortfall, in one way or another, as previously set forth in this opinion. In the case of the named plaintiff Brazelton the shortfall was $3,912.15 and for Harper it amounted to $3,784.51. The normal retirement age under KP&F is 55 years of age coupled with at least 20 years of service (K.S.A. 1979 Supp. 74-4957). Thus, under the law prior to the amendments in question a member with 20 years of service could retire at age 55 and receive full KP&F retirement benefits until social security retirement age of 62. After the amendments, the same person would be required to pay his contribution shortfall in a lump sum or have his KP&F retirement benefits beginning at age 55 reduced by the actuarially determined monthly payment necessary to cover the shortfall and compound interest. Assuming retirement in 1976, in the case of Brazelton the shortfall payment is $42.48 per month and for Harper it is $93.43. Thus, for the period from age 55 to age 62, the pensioner would actually receive less each month than he would have received prior to the amendments. Appellants concede in their brief that the amendments to K.S.A. 74-4965 and 74-4966 have the following effects on the members of plaintiffs' class:

"1.  A 4.95 percent reduction in take-home pay as of January 1, 1976.
"2.  A reduction in retirement benefits for those who retire between the ages of 55 and 62 as compared to previous law.
"3.  Imposition of a 'contribution shortfall' payment . . . ."

Appellant also contends that the amendments result in an increase in total benefits to members who had contributed to both KP&F and social security if they live long enough. It appears from the evidence that the class as a whole would in all probability receive greater total benefits under the amended statutes as opposed to the prior law. This argument might prevail if we were faced solely with the future application of the amendments and if they only required increased future contributions combined with increased benefits. That determination is not before the court in this action. Appellee contends, and the trial court so found, that the amendments constitute a retroactive change of the contribution rate for the period from 1967 to January 1, 1976, create a disadvantageous modification of plaintiffs' rights without a corresponding offsetting advantage, and further constitute an unlawful and unconstitutional impairment of the obligation of

contracts under Article I, Section 10 of the United States Constitution and are also contrary to the provisions of K.S.A. 1979 Supp. 74-4923. Appellant argues that the imposition of the "contribution shortfall" is not retroactive as the money is to be collected in the future and therefore is not an impairment of contract. It is difficult to fathom how an increase in contribution rates to be applied for past years of service already rendered could be collected in any other manner than in the future. However, the argument begs the point as obviously the requirement to pay additional KP&F contributions for years of past completed service does operate retroactively and adversely affects the rights the members of the class enjoyed during the period from 1967 to January 1, 1976. As we held in *State, ex rel., v. Paulsen,* 204 Kan. 857, 465 P.2d 982 (1970), any such impairment is constitutionally prohibited and "the magnitude or degree of the impairment is of no consequence." p. 861. One of the glaring deficiencies of the statutes as amended is that members of the class were given no option to (1) remain under the old provisions of the system and continue to pay reduced rates and receive benefits on retirement reduced in part by social security benefits, or (2) to elect to participate in the new provisions of the system, pay the contribution shortfall and higher rates, and receive full KP&F benefits. If such an option had been provided each individual would have had the right to make a determination of which system would be most beneficial to his or her needs. To have the retirement benefit provisions of an employment contract retroactively changed in a substantial manner by the unilateral action of the employer to the disadvantage or detriment of the members of the class violates both the constitutional prohibition against impairment of contract and the express terms of K.S.A. 1979 Supp. 74-4923.

The trial court made, among others, the following findings of fact:

"5.  In 1974-1975, K.S.A. 74-4965 and 4966, which outlined a method of adjusting deductions and benefits for those employees belonging to both Social Security and KP&F, were amended by the Kansas legislature to eliminate the dual and interlocking system between Social Security and KP&F as it existed by virtue of those statutes.

"6.  The 1974-1975 amendments to K.S.A. 74-4965 and 4966 mandate a reduction in benefits to those employees contributing to both Social Security and KP&F. These amendments have retroactive application, causing these

plaintiffs to become liable for contribution shortfalls which would not have been required of them under the existing statutes.

"7. The 1974 amendment created a class of employees who, because of their contribution to both Social Security and KP&F, would be entitled to full KP&F benefits even though they had not contributed a full seven percent (7%) to the KP&F system from 1967 to 1976. This, the Budget Committee believed, led to the appearance of inequity.

"8. The 'appearance of inequity' in the minds of the Committee was created when the 1974 amendment made all contributions and benefits under KP&F equal for all members. The amendment created a class of members who, from 1967 to 1976, had not contributed a full seven percent (7%) of their salary to KP&F. This class, however, was now to receive full KP&F benefits upon retirement.

"9. As a result of the 1974 and 1975 amendments, a contribution shortfall was assessed to those employees covered by both KP&F and Social Security prior to 1976.

. . . .

"11. Approximately 300 members of the Kansas Police and Firemen's Retirement system are required to make lump sum contributions to the system.

"12. The total amount of said lump sum contribution shortfall for the 300 members is $487,630.05.

. . . .

"16. There is no administrative procedure to terminate the reduction of benefit payments even though a retiree has repaid the system his total contribution shortfall payback.

"17. At creation, in 1967, the KP&F System was funded on a sound actuarial basis and would have continued to be funded on a sound actuarial-reserve basis because of other provisions in the Act creating the Kansas Public Employees Retirement System. The 1974 and 1975 shortfall amendments to KP&F were not needed to keep the System on a sound actuarial footing.

. . . .

"19. If the contribution shortfall was not assessed to the employees, higher employer contributions to KP&F would be required. If no shortfall was assessed to the employees, the uniform cost rate for employers would, at the most, increase by 1/10th of a point, which is a negligible impact.

"20. There is only a relative, minor difference in administrative complexity for the KP&F System when KP&F benefits are periodically reduced by Social Security increases, as compared to the situation where there is no relationship between the fund and Social Security. In terms of additional administrative costs between a system affected by Social Security increases and one that is not, the difference in costs is negligible. Thus, the administrative problems involved were not of primary importance in deciding whether changes in KP&F should be made.

"21. A reduction in take-home pay of the members of the class is caused by the additional burden of a deduction for his Social Security contribution on top of his deduction for KP&F contribution."

All of the findings are supported by substantial competent evidence and many are admitted by appellant.

In *Yeazell v. Copins,* 98 Ariz. 109, 402 P.2d 541 (1965), it was held that an employee at the date of employment became vested with contractual pension rights in accordance with the statutes as they existed on that date and that no change could be made without the agreement of the employee. We decline to adopt that hard and fast rule. There may be times when changes are necessary to protect the financial integrity of the system or for some other compelling reason which would mandate and justify some unilateral changes. As pointed out in *Singer v. City of Topeka,* the California courts have developed a continuing body of law, on a case by case basis, determining an employee's rights to pension benefits. The present application of the rules developed by the decisions of the California courts were set forth recently in *Betts v. Board of Administration,* 21 Cal. 3d 859, 863, 148 Cal. Rptr. 158, 161, 582 P.2d 614 (1978), as follows:

"A long line of California decisions has settled the principles applicable to the problems herein presented. A public employee's pension constitutes an element of compensation, and a vested contractual right to pension benefits accrues upon acceptance of employment. Such a pension right may not be destroyed, once vested, without impairing a contractual obligation of the employing public entity. (*Kern v. City of Long Beach* (1947) 29 Cal. 2d 848, 852-853 [179 P.2d 799].) The employee does not obtain, prior to retirement, any absolute right to fixed or specific benefits, but only to a 'substantial or reasonable pension.' (*Wallace v. City of Fresno* (1954) 42 Cal. 2d 180, 183 [265 P.2d 884].) Moreover, the employee's eligibility for benefits can, of course, be defeated 'upon the occurrence of a condition subsequent.' (*Kern, supra,* at p. 853 [179 P.2d at p. 802].)

"However, there is a strict limitation on the conditions which may modify the pension system in effect during employment. We have described the applicable principles as follows: 'An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system. [Citations.] Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, *and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages.* [Citations.] . . . .' "

We think the California rule as it has evolved is as appropriate to safeguard the interests of government and its employees in the State of Kansas as in the State of California.

Evidence in the instant case showed that the imposition of the retroactive increase in rates and the contribution shortfall were

not necessary to preserve or protect the pension system; to maintain flexibility; to permit necessary adjustments due to changing conditions; to protect the beneficial purpose of the system; to maintain the system on a sound actuarial basis or by reason of administrative necessity. The sole purpose of the contribution shortfall was to overcome an appearance of inequity which would otherwise result if members of plaintiffs' class were to receive increased KP&F benefits (no reduction for social security benefits) without having contributed a full 7% to the system during the period in question. While it is true that without the imposition of the contribution shortfall, new employees coming into the system after January 1, 1976, would be required to pay a full 7% of their compensation to receive the same benefits that members of the class would receive who paid a lesser amount during the years prior to January 1, 1976, we are of the opinion that such an inequity is not sufficient justification within the so-called California rule to retroactively impair the contractual rights of the class.

K.S.A. 74-4969 provides:

"If any clause, paragraph, subsection or section of this act shall be held invalid or unconstitutional, it shall be conclusively presumed that the legislature would have enacted the remainder of this act without such invalid or unconstitutional clause, paragraph, subsection or section."

In *Flax v. Kansas Turnpike Authority*, 226 Kan. 1, Syl. ¶ 6, 596 P.2d 446 (1979), we held:

"A statute, apparently valid upon its face, may be unconstitutional in its application to a particular set of facts, circumstances or classifications."

The record is silent as to what has transpired with respect to members of the class since January 1, 1976, or to employees hired by participating employers since that date. In the original petition filed by plaintiffs a temporary restraining order and injunction were requested. However, the record does not reflect that either was ever granted. The record is silent whether the members of the class who have retired since January 1, 1976, are having their KP&F benefits reduced by the contribution shortfall. It does not indicate whether members of the class who are still employed have been assessed a full 7% of compensation for KP&F or only the difference between their social security payments and 7%. It does not indicate whether new employees hired between January 1, 1976, and June 25, 1979, (the date of the trial court decision

enjoining the defendant from enforcing K.S.A. 74-4965 and 74-4966, as amended) paid a full 7% of compensation to KP&F during that period. Such new employees, as a part of their contract of employment, would expect to pay 7% to KP&F and could expect to receive on retirement full KP&F benefits unreduced by any social security benefits.

The 1975 amendment to K.S.A. 74-4966 clearly requires the members of the class to pay additional contributions to KP&F for a period of employment already completed and performed and results in a retroactive impairment of the employee's contractual rights which is prohibited by the Constitution and invalid. As a result the 1974 amendment to K.S.A. 74-4965 is also fatally defective in that it mandates increased contributions to KP&F (from 2.05% to 7%), a distinct disadvantage to the employee, with no offsetting or compensating advantage.

Therefore, we hold that the 1974 amendment to K.S.A. 74-4965 and the 1975 amendment to 74-4966 are invalid as to the plaintiffs and the members of plaintiffs' class as an unconstitutional violation of the contract clause of the United States Constitution and as being contrary to the express provisions of K.S.A. 1979 Supp. 74-4923. Absent any option for members of plaintiffs' class to retain their old position in the system or accept the new provisions, the rights of the members of the class have been substantially impaired unilaterally and retroactively without offsetting advantages. The statutes as amended are valid as to those employees who have commenced employment with a participating employer subsequent to January 1, 1976. Defendant is directed to restore plaintiffs and the other members of the class to their rights as they existed prior to January 1, 1976, including such monetary adjustments and payments as may be required.

The trial court decision is affirmed as to plaintiffs and members of the plaintiffs' class and under the provisions of K.S.A. 60-1703, the case is remanded to the district court for such further proceedings and orders as may be necessary.