No. 73,436

PAULA MOORHOUSE, *Appellant*, v. CITY OF WICHITA, *et al.*,
*Appellees.*
(913 P.2d 172)

Opinion filed
March 15, 1996.

*Angela L. Rud*, of Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., of Wichita, argued the cause, and *Terry J. Torline*, of the same firm, was with her on the briefs for appellant.

*Michael D. Pepoon*, assistant county counselor, argued the cause and was on the brief for appellee Board of County Commissioners of Sedgwick County.

*Kelly J. Rundell*, senior assistant city attorney, argued the cause, and *Gary E. Rebenstorf*, city attorney, was with him on the brief for appellee City of Wichita.

The opinion of the court was delivered by

LOCKETT, J.: Employee brought this action against the City of Wichita and Sedgwick County. Employee claimed that a joint ordinance/resolution of the City and the County which transferred her employment from the City to the County resulted in a breach of her employment contract and a substantial reduction of her vested city retirement benefits and was unconstitutional; she requested specific performance. The trial court granted summary judgment to the City and the County. Employee appeals. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

Plaintiff Paula Moorhouse was employed by the consolidated City of Wichita and Sedgwick County Emergency Communications Department (ECD) for approximately 18 years. The consolidated ECD was operated by the City of Wichita. Moorhouse was an at-will City employee. Moorhouse's salary as a City employee was $13.66 per hour. She was a vested participant in the Wichita Employees Retirement System Plan No. 1 (WER Plan or Plan) and had accumulated over $20,000 in the Plan. Under the WER Plan, Moorhouse was eligible to retire with full benefits after 30 years of service, or on September 1, 2005. Her estimated pension benefit, if she continued in her position with ECD with expected pay increases, would be $2,051.90 per month. In 1994 employees contributed 6.4% and the City contributed 9.5% to the Plan.

The City and the County adopted a joint ordinance/resolution under which operation of the consolidated ECD was transferred to Sedgwick County effective January 1, 1994. On that date Moorhouse became a County employee, though her job duties remained the same. Also on that date her participation in the WER Plan ceased and she began participation in the Kansas Public Employees Retirement System (KPERS). Under KPERS, an employee's interest vests in 10 years. The employee contributes 4%, and the employer rate is 2.1%, plus annual interest payments of 4%. Moorhouse's prior participation and benefits under the WER Plan would not be transferred to KPERS. Moorhouse would not be eligible under KPERS to retire until age 55, in the year 2011, and she would receive 30% less benefits.

Based on her reduced retirement benefits upon transfer to the County, Moorhouse filed this action against the City of Wichita

and Sedgwick County on March 10, 1994. Moorhouse sought an order of mandamus directing the City and County to retain her as a City employee and ordering that the City fulfill its contractual obligation to her under the pension plan and to afford such other fringe benefits available to her as a City employee.

Sometime after January 1, 1994, Moorhouse became aware of another City ordinance under which City employees who had been transferred under a joint department to Sedgwick County were reinstated in the WER Plan if the employee returned to City employment within 6 months of the date of the transfer. Based on this ordinance, Moorhouse terminated her employment with the ECD on June 30, 1994, and resumed employment with the City as a clerk typist in the Police Records Department at $9.68 per hour. On July 30, 1994, Moorhouse's new position was reclassified at a salary of $10.10 per hour. Because her salary as a clerk typist was less than her prior City salary, Moorhouse's actual contributions to the WER Plan were reduced, and her projected retirement benefits were similarly reduced. Her projected retirement benefits, if she remained employed in that position with normal pay increases, would be $1,441.76 per month, a reduction of $610.14 per month in expected benefits than had she remained a City ECD employee under the WER Plan. Based on Moorhouse's life expectancy of 73 years, the reduction of benefits would total $175,720.32.

Both the City and the County filed motions to dismiss for failure to state a claim and because mandamus and specific performance were not appropriate remedies. The district court granted the motions to dismiss the mandamus action and denied the motions to dismiss the specific performance claim. Moorhouse was allowed to file an amended petition.

An amended petition was filed. In the amended petition Moorhouse claimed that (1) the City breached a "contract" under which she agreed to perform labor and services for the City in the ECD; (2) the County, by assuming full responsibility for the ECD, assumed liability to provide her with benefits equal to her benefits under the City plan; and (3) the joint ordinance/resolution to transfer the ECD to the County was an unconstitutional impairment of

her vested retirement benefits under the City plan. Moorhouse prayed:

"A. For an order of specific performance requiring the City or County to continue to treat plaintiff as a City employee for retirement plan purposes or provide equivalent benefits to plaintiff;

"B. In the alternative, for judgment against defendant City and/or County in an amount in excess of $50,000.00;

"C. For an order declaring the joint resolution of the City and County described herein to be unconstitutional and invalid to the extent it impairs plaintiff's contract rights;

"D. For an order allowing plaintiff recovery of her costs herein expended and for such other and further relief as to the Court may seem just, fair and equitable."

The City and the County both moved for summary judgment, arguing: (1) Moorhouse was now employed by the City and therefore the case was moot, and (2) computation of the monetary damages sought as an alternative to specific performance were now impossible.

Moorhouse responded that her new position with the City was at a lower salary; therefore, even though she was now a City employee she had suffered substantial losses to her retirement benefits. She contended she took the new position with the City to mitigate her damages, not because she no longer wanted to work in the ECD. Moorhouse pointed out to the judge that she sought relief because she is not now entitled to "equivalent benefits" under the WER Plan. Moorhouse also asserted that summary judgment was not proper because discovery was incomplete. She contended further discovery would show that the City and the County did not reach an agreement prior to January 1, 1994, as to how her and other employees' retirement benefits would be treated after the transfer and would reveal that the County contributed a lower percentage to retirement benefits under KPERS than the City contributed under the WER Plan. Finally, Moorhouse argued that having the joint ordinance declared unconstitutional was not moot, although she was now an employee of the City.

The court noted Moorhouse was now a City employee participating in the City WER Plan. The court concluded that because Moorhouse was not an ECD employee, she did not have standing

to challenge the constitutionality of the joint ordinance/resolution transferring operation of the ECD from the City to the County. The court determined that Moorhouse's amended petition did not state a cause of action and granted the City's and the County's motions for summary judgment. Moorhouse appeals, claiming: (1) she had standing to challenge the constitutionality of the joint ordinance/resolution and (2) the trial court erred in granting judgment to the City and the County.

## STANDING

Standing is a question of whether the plaintiff has alleged such a personal stake in the outcome of a controversy as to warrant invocation of jurisdiction and to justify exercise of the court's remedial powers on his or her behalf. A party must have a sufficient stake in the outcome of an otherwise justiciable controversy in order to obtain judicial resolution of that controversy. *Harrison v. Long*, 241 Kan. 174, 176, 734 P.2d 1155 (1987); see *Joe Self Chevrolet, Inc. v. Board of Sedgwick County Comm'rs*, 247 Kan. 625, Syl. ¶ 1, 802 P.2d 1231 (1990). The party must have personally suffered some injury and there must be a causal connection between the injury and the challenged conduct. *Harrison*, 241 Kan. at 176-77.

A court has a duty only to decide actual controversies and will not give opinions upon moot questions or abstract propositions. A case will be dismissed as moot when it clearly and convincingly appears that the actual controversy has ceased and any judgment rendered in the case will be an idle act insofar as the rights involved in the action are concerned. See *City of Roeland Park v. Cross*, 229 Kan. 269, 270, 623 P.2d 1332 (1981).

Moorhouse argues that although she resigned her position with the ECD, she has standing to challenge because of the substantial reduction in her retirement benefits. She asserts that she would not have been required to accept the lower-paying job with the City were it not for the joint ordinance/resolution transferring her former position with the City to the County. Thus, according to Moorhouse, she is still suffering injury, even though participating

in the City's retirement plan, because her position is lower-paying and her retirement benefits are reduced.

At the time Moorhouse initiated this action, she was an employee of the ECD and had been for a number of years. As an employee, she was affected by the transfer of operations from the City to the County pursuant to the joint ordinance/ resolution. She was forced to cease her participation in the WER Plan and begin participation in KPERS. At that point Moorhouse had standing to challenge the constitutionality of the ordinance/resolution.

However, subsequent to filing her action Moorhouse terminated her employment with the ECD and accepted a new position with the City, and her City retirement benefits resumed. Even if the joint ordinance/resolution is unconstitutional, when Moorhouse terminated her employment with the ECD she no longer had a personal stake in the outcome of the controversy and could obtain no relief from such a finding.

The trial court correctly determined that Moorhouse lacked standing to challenge the constitutionality of the joint ordinance/ resolution. In addition, the alternative relief Moorhouse sought, specific performance requiring the City or the County to treat her as a City employee for retirement plan purposes, is unnecessary. She is currently a City employee and is participating in the City retirement plan.

## SUMMARY JUDGMENT

The trial court found that Moorhouse failed to state a claim in alleging that the City breached a contractual agreement and that by assuming operation of the ECD, the County became liable to provide her benefits accorded by the City. The trial court did not set forth reasons why these claims were insufficient.

The court's decision is in the nature of summary judgment. Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. K.S.A. 60-256(c). If reasonable minds could differ as to the conclusions drawn from the facts, summary judgment

must be denied. *Finstad v. Washburn University*, 252 Kan. 465, 468, 845 P.2d 685 (1993); *Bank of Alton v. Tanaka*, 247 Kan. 443, 446, 799 P.2d 1029 (1990). When a summary judgment is challenged on appeal, this court must read the record in the light most favorable to the party defending against the motion. *Patterson v. Brouhard*, 246 Kan. 700, 702-03, 792 P.2d 983 (1990). Once the moving party has properly supported a motion for summary judgment, the nonmoving party must come forward with specific facts showing a genuine issue for trial. *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, 762, 863 P.2d 355 (1992).

Moorhouse alleges that she has a vested contractual right in the City retirement program. She contends that the action of the City and the County by their joint ordinance/resolution transferring operation of the ECD to the County impaired this contract in contravention of Article I, § 10 of the United States Constitution, which provides in pertinent part that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." Moorhouse relies on *Singer v. City of Topeka*, 227 Kan. 356, 607 P.2d 467 (1980).

Before addressing the analysis under *Singer*, we note that Moorhouse also points out that the 1995 Kansas Legislature enacted K.S.A. 1995 Supp. 74-4912b, which provides in part that a City of Wichita employee who is vested in the WER Plan and who is transferred to the employ of Sedgwick County as a result of a transfer of function between the City and the County may elect to continue participating in the WER Plan for the duration of his or her County employment. A nonvested member of the WER Plan has no similar right of election. Moorhouse asserts that the statute shows the public policy of this state to protect government employees' vested contract rights when government functions are consolidated. According to Moorhouse, it would be fundamentally unfair for this court to ignore this public policy and the legislature's clear intent to provide a remedy to employees like her.

K.S.A. 1995 Supp. 74-4912b became effective July 1, 1995, and does not apply to Moorhouse; Moorhouse concedes this. The legislature's enactment of the statute reflects its understanding that employees like Moorhouse would not be entitled to remain in the

WER Plan in the absence of such a statute. The statute provides no authority to reach a result different than that of the trial court here with respect to Moorhouse's claims. *Singer* involved a class action challenge to changes in the City of Topeka's local retirement program for firemen and policemen. The members of the class had been participating in a retirement plan under which 3% of their monthly salary was paid into the pension fund. The local plan was mandated by K.S.A. 13-14a01 *et seq.* In 1961, KPERS was established, and the Kansas Police and Firemen's Retirement System (KP&F) was created as a division of KPERS in 1965. Participating KP&F employers withheld 7% of the gross pay of each covered employee. In 1966 the city elected to become a participating KP&F employer as to all policemen and firemen employed on or after January 1, 1967. Persons hired before that date remained under the local plan and continued to contribute 3% of their salaries.

In 1976, the Kansas Legislature increased the required employee contribution from 3% to 7% for all policemen and firemen still under local retirement plans, effective January 1, 1978. No additional disability, death, or retirement benefits were granted to the covered employees despite the increase in employee contributions. Effective January 1, 1979, the city by resolution required all Topeka policemen and firemen, including those hired prior to 1967, to participate in the KP&F plan. The effect was to abolish the local plans, transfer all pension reserves to KPERS, and shift administration of the plans from local to state authorities. Employees transferred to KP&F under this action could elect to become full members of the KP&F system. Alternatively, the employees would become "special members" of KP&F and would receive the same pension and other benefits provided by the local plans, but would contribute 7% of their salaries to the plan. The employees in *Singer* did not elect to become full members of KP&F; therefore, they were "special members." The special members filed a class action alleging that the increase of employee contributions without increased benefits infringed upon their constitutionally protected contract rights. The district court found that the special members' contract rights had been infringed upon and,

as such, all contributions in excess of 3% had to be returned. The city appealed.

In evaluating whether the statutes increasing the contribution rate of the employees from 3% to 7% were in contravention of the Contract and Due Process Clauses of the United States Constitution, the *Singer* court set forth a four-part test:

"(1) whether governmental pension plans in this state are mere gratuities, subject to unilateral change at will, or whether they are a form of contract between employer and employee;

"(2) whether, at the time this action was commenced, plaintiffs and the classes possessed vested contract rights which were subject to the protection of the contract clause;

"(3) whether a governmental employer may unilaterally change or modify a pension plan, and if so, within what limitations; and

"(4) whether the challenged statutes impose a substantial detriment on plaintiffs and the classes, without correlative benefit." 227 Kan. at 362.

The *Singer* court recognized that retirement systems create contracts between the government employer and its employees who are members of the system, stating:

"A public employee, who over a period of years contributes a portion of his or her salary to a retirement fund created by legislative enactment, who has membership in the plan, and who performs substantial services for the employer, acquires a right or interest in the plan which cannot be whisked away by the stroke of the legislative or executive pen, whether the employee's contribution is voluntary or mandatory." 227 Kan. at 363.

The *Singer* court stated that continued employment over a reasonable period of time, coupled with plan membership and regular contributions into the plan, create a contract right in the pension plan. 227 Kan. at 365. After noting that the retirement plan was part of the inducement for the employment, the *Singer* court held that the plaintiff class of firemen and policemen, who had been so employed for many years (all plaintiffs for more than 11 years and one for more than 20 years), had vested contract rights in the retirement plan. 227 Kan. at 366.

Even though the class had vested contract rights in the retirement plan, the *Singer* court held that the city could make reasonable modifications in the plan in order to keep the system flexible and accommodate changing conditions while maintaining the in-

tegrity of the system. It adopted a rule set forth in *Allen v. City of Long Beach*, 45 Cal. 2d 128, 287 P.2d 765 (1955), which held invalid legislation that increased the employee's contribution to a retirement plan from 2% to 10% with no increased benefits and with no showing that the increase was necessary to keep the plan actuarially sound. 227 Kan. at 366. The following rule was stated by the *Singer* court: "[T]he state or a municipality may make reasonable changes or modifications in pension plans in which employees hold vested contract rights, but changes which result in disadvantages to employees must be accompanied by offsetting or counterbalancing advantages." 227 Kan. at 367.

The *Singer* court then held that legislation increasing the contribution of class members from 3% to 7% was a disadvantage unaccompanied by a corresponding advantage. However, it upheld the statute which transferred administration of the retirement plan from local to state authorities (with no increase in contribution), finding that the change in administration was a reasonable modification which did not impair the integrity of the system. 227 Kan. at 367-69.

*Brazelton v. Kansas Public Employees Retirement System*, 227 Kan. 443, 607 P.2d 510 (1980), contains a similar analysis. There, participants in the KP&F system were required to contribute 7% to the fund. Those contributions were reduced by the amount the participants paid to social security, and upon retirement the KP&F benefits would be reduced by one-half of the social security benefits. The Kansas Legislature enacted legislation which eliminated the reduction of the KP&F pension by the amount of the social security benefits. However, the participants were required to make up the "contribution shortfall" from earlier years. The *Brazelton* court recognized that under the prior law, participants could retire at age 55 and receive full KP&F benefits until social security retirement at age 62, but after the legislation was enacted the participants would receive full KP&F benefits only by paying the shortfall. 227 Kan. at 450. Following the rule stated in *Singer*, the *Brazelton* court held that there was no reasonable basis for the change and that the change resulted in a disadvantage without a corresponding advantage. 227 Kan. at 455.

*Singer* sets forth the basis for evaluating Moorhouse's claim. Moorhouse worked for the City for 18 years and had a vested contract right in the WER Plan. Thus, the City could not unilaterally modify her participation in the Plan by disadvantaging her without a corresponding benefit. Moorhouse's claim asks us to find that the City of Wichita exceeded its limitations by unilaterally modifying Moorhouse's retirement plan without providing a corresponding benefit to her. Moorhouse claims, based on the rationale of *Singer*, that the joint ordinance/resolution impairs her City WER Plan retirement benefits.

The fallacy in Moorhouse's argument is that the City did not unilaterally modify the WER Plan. The WER Plan remained unchanged and Moorhouse's previously accrued benefits under the Plan remained the same; it was Moorhouse's employment classification and salary that changed.

*Singer*, which dealt with a single employer with two separate retirement plans and a modification of one retirement plan which resulted in a disadvantage without a corresponding advantage, is distinguishable. There was no modification in the WER Plan here; it was Moorhouse's changes of employers and reduction in wages which affected her retirement benefits. When Moorhouse became an employee of the County, the City was not contractually obligated to continue Moorhouse's future participation in its retirement plan. *Singer* does not address the impact of a change in employers; it merely states that if there is no change in employment, the government employer cannot unilaterally modify the retirement plan to the detriment of the employee without providing a corresponding benefit. Because there was no unilateral modification but a change in employers, *Singer* is inapplicable.

Moorhouse was an employee-at-will. An employee-at-will has no property interest in continued employment. *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, Syl. ¶ 2, 872 P.2d 252 (1994). An employer has no obligation to continue the employment of an at-will-employee. Thus, the City could have terminated Moorhouse's employment outright. If the City had done so rather than entering into an agreement with the County to protect her job, Moorhouse

would not be entitled to continue to accrue future benefits under the WER Plan.

Moorhouse contends that because of the way she was transferred to the County and because her duties did not change, she remained an employee of the City. The tests for determining who employs the worker at a particular time have been stated in various ways. Among the tests are: (1) Whose work was the worker doing at the particular time? (2) What person had authority to discharge the worker? (3) Who had the right to exercise supervision and control over the worker and to determine the manner in which the work was to be done, rather than who actually exercised such control? *Bright v. Cargill, Inc.*, 251 Kan. 387, Syl. ¶ 6, 837 P.2d 348 (1992). When we apply the tests stated in *Bright*, the district court was correct in determining that the transfer of the ECD to the County terminated Moorhouse's employment with the City and she became an employee of the County. *Cf. City of Wichita v. Public Employee Relations Board*, 259 Kan. 628, 913 P.2d 137 (1996), which holds that where a city exercises sufficient control over an entity it creates, the city may be considered the employer.

Although Moorhouse had (and continues to have) a vested interest under the WER Plan in the benefits which had already accrued, her employment by the County terminated her employment by the City and also terminated her contractual interest in the City's retirement plan as to future accrual of benefits. The City has not unilaterally modified the retirement plan it offers to employees. It ceased Moorhouse's participation for the period after her employment with the City was terminated, but the City resumed Moorhouse's participation in its retirement plan upon her acceptance of employment with the City within 6 months of her termination. Moorhouse maintains a vested contractual interest in the WER Plan. She continues to contribute to the WER Plan at the same percentage of her salary as when she was employed by the City in the ECD. Her lower expected benefits are the result of her lower salary, not because of any modification in the Plan by the City. The City has not breached its contract with Moorhouse concerning her participation in the retirement plan.

Moorhouse also alleges that the County is liable, because of its assumption of the operation of the ECD, to provide her with benefits equal to her vested retirement contract with the City. In essence, Moorhouse claims that the County is the alter ego of the City.

A somewhat similar argument was made by an employee in *Doughty v. CSX Transportation, Inc.*, 258 Kan. 493, 905 P.2d 106 (1995). *Doughty* discussed whether an employee of a subsidiary corporation is entitled to the same benefits as an employee of the parent (principal/dominant) corporation. Doughty argued that the principal corporation was responsible to the employees of the controlled corporation.

The *Doughty* court observed that any person, partnership, association, or corporation may incorporate to conduct or promote any lawful business or purpose. In addition, a corporation which owns stock in another corporation stands in the same relation as a stockholder. 258 Kan. 493, Syl. ¶¶ 4, 5. The *Doughty* court noted that courts will disregard the fiction of a separate legal entity when there is such domination of finances, policy, and practices that the controlled corporation has no separate mind, will, or existence of its own and is but a business conduit for the principal. 258 Kan. at 497. The *Doughty* court noted that no single factor or combination of factors is necessarily conclusive in determining whether to apply the alter ego doctrine. It observed that the fact that two corporations may have stockholders or officers in common, that one is the parent of the other, that the parent selects from its own directors and officers the majority of the directors of the other, and that a parent finances the other is, without more, insufficient to warrant treating the two corporations as one. The court noted that for it to be able to treat the two entities as one corporation, it must be able to conclude from the facts and circumstances that the relationship between the entities is so intimate, the parent's control over its subsidiary is so dominating, and the business and assets of the two are so mingled that the recognition of the subsidiary as a distinct entity would be a legal fiction that results in an injustice to the employee. 258 Kan. at 504-05. The court concluded that under the facts, there was not sufficient evidence of control of the parent

corporation over the subsidiary to warrant the finding of an injustice to the employee.

The rationale of *Doughty* does not apply to separate governmental entities such as a city and a county. Neither a city nor a county can own or acquire an interest in the other. Therefore, under the fact of this case, we cannot disregard the fact that the City and the County are separate legal entities and find that a County employee is entitled to the benefits of a City employee.

Because Moorhouse is no longer employed by the County in the ECD, can the County be liable? Moorhouse's argument that the County is liable is tenuous. The County assumed operation of the consolidated ECD. Employees of the ECD became County employees. The County was obligated to offer its employees participation in its retirement plan, KPERS. The County was not obligated at that time, nor would it have been permitted, to offer participation in the WER Plan or a separate retirement plan similar to the WER Plan. *Cf.* K.S.A. 1995 Supp. 74-4912b. Moorhouse is not entitled to relief from the County.

Affirmed.