Weston E. NELLIUS et al., Defendants
Below, Appellants,

v.

Albert J. STIFTEL et al., Plaintiffs
Below, Appellees.

Supreme Court of Delaware.

Submitted Dec. 11, 1978.*

Decided Dec. 26, 1978.

* The application was heard on November 27, 1978 but the record has been supplemented by a letter from the Governor, filed December 6, 1978, and a letter memorandum from counsel for the appellees filed December 11, 1978.

Vincent J. Poppiti, State Sol., and Regina M. Small, Deputy Atty. Gen., for defendants below, appellants.

Victor F. Battaglia and Samuel R. Russell, Wilmington, for plaintiffs below, appellees.

Before HERRMANN, C. J., DUFFY, McNEILLY, QUILLEN and HORSEY, JJ., constituting the Court En Banc.

PER CURIAM:

The pertinent history of the case is set forth in prior reported opinions. *Stiftel v. Malarky,* Del.Ch., 378 A.2d 133 (1977), reversed and remanded, Del.Supr., 384 A.2d 9 (1977). On remand, the Vice Chancellor entered an order dated February 22, 1978. The defendants have appealed that order.

After the case was at issue upon the filing of the plaintiffs' brief on June 12, 1978, the three senior members of this Court, constituting the entire Court at that time, disqualified themselves for interest. On June 13, 1978, the Chief Justice notified the Governor of such disqualifications and requested the Governor, pursuant to the power granted in Article IV, § 15 of our State Constitution, to commission judges *ad litem* to sit in the appeal.[1] Effective August 8, 1978, the Court was enlarged and now consists of five Justices. See 60 *Del.L.* Ch. 540; 61 *Del.L.* Ch. 533. Since the two newly appointed members of the Court have recently disqualified themselves for interest, the Chief Justice's request remains outstanding notwithstanding the Court's enlargement. The Governor has not to date exercised his constitutional power to commission temporary judges to sit in this appeal.

The plaintiffs have requested the members of the Supreme Court to determine that they are authorized and required under the "rule of necessity" to hear and decide the issues raised by the instant appeal.

The Delaware Constitution requires this Court to "receive" and "determine" all appeals from the Court of Chancery. *Del. Const.* Art. IV, § 11(4). If the disqualification of all the members of this Court means that these plaintiffs would have the doors of this Court closed to them, then under the common law "rule of necessity we are qualified, authorized and required to decide" this appeal. *Atkins v. United States,* U.S. Ct. of Claims, 556 F.2d 1028, 1040 (1977), cert. denied 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978); *Schwab v. Ariyoshi,* Haw.Supr., 57 Haw. 348, 555 P.2d 1329 (1976); *Evans v. Gore,* 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920). "The rule, simply stated, means that a judge is not disqualified to [sit in] a case because of his personal interest in the matter at issue if there is no other judge available to hear and decide the case." *Atkins v. United States, supra,* at 556 F.2d 1036. The rule of necessity is well established and has been traced back to 1430. *Id.* at 556 F.2d 1036. See also *In re Leefe,* 2 Barb.Ch. 39 (N.Y.1845), a decision by Chancellor Kent.

There is another forum available if the Governor elects to exercise his Constitutional power to appoint judges *ad litem* under Article IV § 15. The Court has the benefit of two letters from the Governor which have been made part of the record.

The Governor is of the view that legislation embodying a negotiated settlement of the claims involved in this case would be a preferable resolution of the matter. In the exercise of his executive discretion, the Governor has therefore declined to commission judges *ad litem* and indicated his inten-

---

1. The section provides in part: "The Governor shall have power to commission a judge or judges ad litem to sit in any cause in any of said Courts when by reason of legal exception to the Judges authorized to sit therein, or for other cause, there are not a sufficient number of Judges available to hold such Court . ."

tion to submit promptly to the new 130th General Assembly legislation which he hopes will resolve the matter. He feels the prospect of an amicable, and lasting compromise is enhanced by placing reliance on "the least extraordinary process."

The Governor has written that any such legislative resolution "must occur within a reasonable time," and, "should the General Assembly not act on the legislation prior to the traditional February recess," it is his intention "to take the necessary steps under the Constitution to commission judges *ad litem.*" The Governor makes it clear, however, that "if the General Assembly adopts legislation prior to its February recess, which legislation is sufficiently without flaw so that [he is] not compelled to exercise [his] veto power, then [he] will choose not to exercise [his] discretionary authority under Article IV, Section 15 of the Constitution to appoint judges *ad litem* in this cause."

■ The plaintiffs contend that they are entitled to a Court to which they can immediately apply and which will schedule oral argument on the merits of this appeal at an early date. They argue that, should we refuse to hear and decide this appeal, the doors of this Court will be closed to them and they could be denied due process of law. See *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Atkins v. United States, supra.*

Some factual background is helpful. This appeal was filed on March 23, 1978. The briefing on the merits was completed with the reply of the defendants on June 26, 1978. While the delay in hearing the case is obviously not desirable, it is also not unprecedented. Other litigants in civil cases before this Court have borne the burden of similar and longer delays. In fact as of December 14, 1978, when the last list of civil cases at issue was compiled, there were still approximately twenty-five pending civil cases which were at issue prior to this appeal and which will not be heard before January or February. In light of the facts, it is difficult to say that the absence of an immediate forum has been so unreasonable

as to close the doors of this Court to the plaintiffs.

■ The members of this Court have disqualified themselves for interest. We should not automatically apply the rule of necessity and thereby create a situation less desirable than one caused by a delay in adjudication commonly experienced by other litigants in this Court and elsewhere. 2 Davis *Administrative Law* § 12.04, at 164 (West 1958); *Smith v. Department of Registration and Education,* Ill.Supr., 412 Ill. 332, 106 N.E.2d 722, 727 (1952).

■ We are mindful that this dispute involves separate branches of government in various capacities. The Governor has exercised his executive judgment in light of his overall executive responsibilities. The Governor's judgment is entitled to careful consideration and his desire to resolve the dispute is commendable. But ultimately, so long as this appeal is pending, the issue is not one of executive discretion but, rather, the right of any litigant to have the doors of this Court open to him. *Atkins v. United States, supra.*

■ Independent of any respect for the exercise of a constitutional power by the Governor, in view of the Court's backlog of civil cases, it is difficult to see how this case, placed in normal chronological rank, would or should be heard prior to mid-February, 1979. It cannot now be said that the plaintiffs have been denied a forum due to the disqualification of the members of this Court. Moreover, the Court must bear in mind that the reasons for disqualification persist and the policy against decisions by interested judges is not to be disregarded. Accordingly, by this opinion, we formally confirm the Chief Justice's request of June 13, 1978 to the Governor that judges *ad litem* be commissioned to sit in this appeal.

■ The members of this Court would prefer not to sit in this appeal. But this Court must recognize its responsibility to keep the doors of the Court open to every litigant. The law is clear. When the right of a litigant to be heard conflicts with the

policy against decisions by interested judges, the former prevails. The Court is the guardian of that right and we will not avoid our responsibility.

The clerk will be directed to schedule this appeal for oral argument at the end of the February list. If the matter is not resolved and if the Governor elects not to commission judges *ad litem* before argument day, the members of this Court, under the rule of necessity, will grant plaintiffs' application and, notwithstanding their declared interest, will hear and decide this appeal. In that eventuality, since this application was presented to the entire Court, the entire Court will sit.