F. MORTON WAGONER, *et al.*

*v.*

GLEN B. GAINER, JR., *et al*

(No. 14827)

Decided June 15, 1981.

140

*Chauncey H. Browning*, Attorney General, *James B. Hoover*, Special Assistant Attorney General, *Marianne K. Hoover*, Assistant Attorney General, for appellants.

*James K. Brown* for appellees.

MᴄGʀᴀᴡ, Jᴜsᴛɪᴄᴇ:

Glen B. Gainer, Auditor of the State of West Virginia, and Larrie Bailey, Treasurer of the State of West Virginia, appeal from an order of the Circuit Court of Kanawha County commanding them in mandamus to issue and sign warrants on and after July 1, 1979, paying the appellees, all retired justices or judges of courts of record in West Virginia, increased retirement pay which properly reflects a pay increase given by the Legislature to active justices and judges. Pursuant to a provision of the reenactment of the Retirement System for Judges, W. Va. Code § 51-9-1, *et seq.* (1981 Replacement Vol.), participating retired members of the judiciary are no longer entitled to receive pension increases based upon salary increases granted to active members of the judiciary. The appellees contend, and the lower court found, that this provision violates article one, section ten of the United States Constitution in that it impairs the obligation of the State to maintain certain vested contractual rights. They also argue that inasmuch as the provision applies only to some of the retirement plan participants, it violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. We think the lower court was correct

in finding the provision unconstitutional, and we affirm the issuance of the writ of mandamus.

In 1949, the West Virginia Legislature established the judges retirement system. 1949 W.Va. Acts, ch. 34. The court below outlined the "general" terms of retirement under the system. "Upon assuming office each justice or judge has to elect to participate . . . [and] must pay 6% of . . . [his] . . . total salary into the fund. Additional[ly], . . . one must serve 16 full years in office and reach . . . [age] 65, or serve 24 [full] years . . . [regardless of age] . . . before . . . entitle[ment] . . . to benefits . . ." The Act became article 9 of chapter 51 of the West Virginia Code. Under the provisions of W.Va. Code § 51-9-6, a retired judge eligible for benefits under the system shall be paid "annual retirement benefits, so long as he shall live, in an amount equal to seventy-five per cent of the annual salary of the office from which he has retired . . . as such salary may be changed from time to time during the period of his retirement." This, we note, is not the only escalator provision in our pension law. Under the Public Employees Retirement System, members of the Legislature who served prior to the effective date of W.Va. Const. art. VI, § 33, (Nov. 3, 1970), are, upon retirement, entitled to the benefit of the escalator provision in W.Va. Code § 5-10-2 (1979 Replacement Vol.). *See, Campbell v. Kelley,* 157 W.Va. 453, 202 S.E.2d 369, 373 (1974); *Bier v. McGehee,* 148 U.S. 137 (1893); *New Orleans Gas Co. v. Louisiana Light Co.,* 115 U.S. 650 (1885); *Oltio & M.R. Co. v. McClure,* 10 Wall. (77 U.S.) 511 (1871); *Dodge v. Woolsey,* 18 How. (59 U.S.) 331 (1856).

Senate Bill No. 170, enacted by the Legislature on March 10, 1979, and made effective July 1, 1979, provided for increases in the salaries of justices and judges. Operating under the escalator provisions of W.Va. Code § 51-9-6, these salary increases would have increased the annual retirement benefits for eligible retired justices and judges. In the course of subsequent legislative procedures, the original Senate Bill was amended by adding a new section, the effect of which was to freeze retirement benefits for retired justices and judges at levels and in amounts determined by the salaries of active justices and judges prior to January

1, 1979. 1979 W.Va. Acts, ch. 26. This amendment appears in the West Virginia Code as W.Va. Code § 51-9-6c (1981 Replacement Vol.).[1] It was pursuant to this provision that the Treasurer and the Auditor refused to issue warrants to the petitioners below which included an increase in pension payments based upon the salary increases for active members of the judiciary.

In their petition for a writ of mandamus, the petitioners below stated in part that "the amendment in question changing the participation was in violation of the equal protection provisions of the 14th amendment of the United States Constitution and it also impairs the obligations of a contract in violation of Article I, Section 10 of the Constitution of the United States."

The trial court, in a letter opinion made a part of the judgment order on which this appeal is based, refers briefly to the equal protection issue and invites attention to the ambiguous language in the added section of the statute. The brief of the appellees makes passing reference to the equal protection issue as well. However, the primary issue we are called upon to decide is whether the circuit court erred in concluding that W.Va. Code § 51-9-6c, which removes the escalator provision from the judges' retirement system, is unconstitutional as a law impairing the obligations of contract in violation of article I, section 10 of the Constitution of the United States. A related issue presented is the authority of the Legislature to alter the terms of the retirement plan in order to maintain the flexibility and fiscal integrity of the plan.

At the outset, our sensitivity to Canon 3(c) of the Judicial Code of Ethics is titillated by a question apparent on the record, the propriety of this Court ruling on the issue of the

---

[1] W.Va. Code 51-9-6c (1981 Replacement Vol.) reads:

No judge or justice receiving retirement benefits under the provisions of sections six and six-a [§§ 51-9-6 and 51-9-6a] of this article shall be entitled to an increase in benefits by virtue of any increase in the salaries of the offices of circuit court judge or justice of the supreme court of appeals enacted after the first day of January, one thousand nine hundred seventy-nine: Provided, that this section shall not apply to a retired judge or justice who is disabled. (1979, c. 26.).

retirement benefits to be paid to justices and judges. Although the parties have not raised the issue, all members of this Court are currently participating in the retirement program, and, thus, it appears that we have a remote pecuniary interest in the outcome of this case and should be disqualified from deciding it under the tenets of the Judicial Code of Ethics. Even as our opinion today touches upon questions affecting our retirement, we note that the venerable common law "rule of necessity" commands that we hear this case.

The United States Supreme Court recently spoke to the rule of necessity in a case involving the salaries of members of the federal judiciary. *United States v. Will*, 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392, (1980). The high court there noted that the first recorded invocation of the rule of necessity was in 1430, when it was held that in the absence of a provision for the appointment of another judge, a judge could act in a case in which he was a party. Y. B. Hil. 8 Hen. VI, case 6, fn. 19. As Pollack said, "although a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal interest, yet he not only may but must do so if the case cannot be heard otherwise." F. Pollack, A *First Book of Jurisprudence*, 253 (1896).

The rule of necessity is of ancient tenure and long honored. *Adkins v. United States*, 214 Ct.Cl. 186, 556 F.2d 1028 (1977); *cert. denied*, 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978); *Pilla v. American Bar Assn.*, 542 F.2d 56 (8th Cir. 1976); *Brinkley v. Hassig*, 83 F.2d 351 (10th Cir. 1936); *Moulton v. Byrd*, 224 Ala. 403, 140 So. 384 (1922); *Olson v. Cory*, 26 Cal.3d 672, 609 P.2d 991, 164 Cal.Rptr. 217 (1980); *Dacey v. Connecticut Bar Assn.*, 170 Conn. 520, 368 A.2d 125 (1976); *Mellius v. Stiftel*, 402 A.2d 359 (Del. 1978); *Wheeler v. Board of Trustees of Fargo Consol. School Dist.*, 200 Ga. 323, 37 S.E.2d 322 (1946); *Schward v. Ariyoshi*, 57 Haw. 348, 555 P.2d 1329 (1976); *Higer v. Hansen*, 67 Idaho 45, 170 P.2d 411 (1946); *Gordy v. Dennis*, 176 Md. 106, 5 A.2d 69 (1936); *State ex rel. Gardner v. Holm*, 241 Minn. 125, 62 N.W.2d 52 (1954); *State ex rel. West Jersey Traction Co. v. Board of Public Works*, 56 N.J.L. 431, 29 A. 163 (1894); *Long*

*v. Watts*, 183 N.C. 99, 110 S.E. 765 (1922); *First American Bank & Trust Co. v. Ellwein*, 221 N.W.2d 509 (N.D.), *cert. denied*, 419 U.S. 1026 95 S.Ct. 798, 42 L.Ed.2d 816 (1974); *McCoy v. Handlin*, 35 S.D. 487, 153 N.W. 361 (1915); *Alamo Title Co. v. San Antonio Bar Assn.*, 360 S.W.2d 814 (Tex. Civ. App.), *writ ref'd, no rev. error* (Tex. 1962); *State ex rel. Bagley v. Blankenship*, 161 W.Va. 630, 246 S.E.2d 99 (1978); *State ex rel. City of Charleston v. Coghill*, 156 W.Va. 877, 207 S.E.2d 113 (1973); *Price v. Fitzpatrick*, 85 W.Va. 76, 100 S.E. 872 (1919); *Stafford v. County Court*, 58 W.Va. 88, 51 S.E. 2 (1905); and *City of Grafton v. Holt*, 58 W.Va. 182, 52 S.E. 21 (1905). The rule of necessity applied in aid of article 3 section 17 of the West Virginia Constitution imposes a duty upon a judge to act in a proceeding wherein he is otherwise disqualified by the Judicial Code of Ethics if his jurisdiction is exclusive and if there is no provision for substitution. Where, however, the tenets or elements creating disqualification contaminate not only the tribunal at issue but also the panel or pool from which the substitutes can be drawn, as is the case here, then the constitutional provision for substitution does not offer a practical alternative. *Bagley v. Blankenship, supra.* Finally, this case involves an issue of constitutional dimension under the United States Constitution and, for that reason, it would be the proper subject of appeal if any litigant is denied due process.

Turning to the issue at bar, we note that the appellants ask us to decide the question, "[m]ay the Legislature change or modify a voluntary contributory retirement system affecting a properly retired public employee receiving retirement benefits at the time of the change or modification?" The issue is more limited here than as framed by the appellants. We emphasize that we are concerned here with a determination of the rights of retired judicial officers recognized under the provisions of article VIII of our state constitution. *See* W.Va. Const. art. VIII, §§ 2, 5. These are the only state officials for whom the Constitution explicitly anticipates a pension system. W.Va. Const. art. VIII, § 8. Keeping in mind that the appellees herein are retired constitutional officers, we nevertheless refer to the

law of public employee pension systems for analogous authority.

The nature of pension rights of a public employee is a question which has caused courts great difficulty. As stated by one annotator: "Development of the law on the question ... has been long and tortious, reflecting the increasing pressure placed upon the judiciary by the evolution of the now generally accepted theory that pensions are a part of the compensation of an employee to which, under ordinary circumstances, he is as much entitled as he is to the wages paid him for the work he has actually performed." Annot. 52 A.L.R.2d 430, at 441. In the context of public employee pensions, our Court has recognized that there are two basic types: "1) Those which require employee contribution to the pension fund and 2) those which do not require such contribution. The first general class may also be divided into systems in which the contributions by employees are compulsory and those in which the contributions are voluntary." *Taylor v. Cabell County Board of Education*, 152 W.Va. 761, 767, 166 S.E.2d 150, 153 (1969).

The court below concluded, and the appellants do not dispute, that the retirement system in question here is a voluntary contributory public pension system, i.e., participants must contribute to the fund in order to be entitled to receive benefits, but persons who are eligible to participate in the plan are not required to do so. In its memorandum opinion the court held:

> [T]he Court is of the opinion that in the instant case [there] exists a valid implied contract between the petitioners and the State, which meets all the necessary requirements for such type of contracts. This contract has not only been partly performed, but fully and completely performed on the part of the petitioners, and up until now by the State. The latter, through its Legislative body, can not now back out or impair the same. [Citing as authority, *Driggs v. Utah State Teachers' Retirement Board*, 105 Utah 417, 142 P.2d 657; *Klamn v. State ex rel. Carlson*, 235 Ind. 289, 126 N.W.2d 487; *Hickey v. Pittsburg Pension Board*, 378 Pa. 300, 106 A.2d 233; 52 ALR 2d 430; *Bender v. Anglin*, 207 Ga.

146

108, 60 S.E.2d 756, certiorari denied, 340 U.S. 878, 71 S.Ct. 125, 95 L.Ed. 638; *Shaw v. Abernathy*, (Ala.), 331 So.2d 636; *Taylor v. Public Employees' Retirement Assoc. of Colo.*, 189 (Colo.) 486, 542 P.2d 383; 52 ALR 2d 441, *Campbell v. Michigan Retirement Board*, 378 Mich. 169, 143 N.W.2d 755 (1966); [and], *60 AmJur 2d Pensions and Retirement Funds*, Section 49 and 50 at pages 921 and 922.]

"The 1966 Michigan case of *Campbell v. Michigan Judges Retirement Board*, [*supra*] is on "all fours" which the instant case and exemplifies the modern and majority rule. *Campbell* holds that:

"Michigan judges' retirement system which is voluntary and contributory on part of judges confers vested rights which legislature may not impair; judges who retired under system containing "escalator clause" tying amount of pension to salary increases which might from time to time be granted to active judges were entitled to increased benefits when judicial salaries were raised, even though in interim the legislature had amended system so as to eliminate escalator clause [citation ommitted]."

The authorities on public pension and retirement systems definitely distinguish between non-contributory and contributory plans and in some instance between compulsory and voluntary contributory systems. Basically, non-contributory plans are held to be gratuities, and can be changed as to future retirement benefits . . . . By the same token, contributory plans are generally held to become vested when requirements have been fulfilled and can not be impaired, unless the act creating them provides therefor . . . .

[O]ur Court has recognized the proposition that in a contributory pension plan, the pensioners' right vest when all the conditions entitling them thereto have been fulfilled. [Citing as authority, Syl. pt. 2, *Kinsey v. Adkins*, 157 W.Va. 375, 201 S.E.2d 288 (1973); *Taylor v. Cabell County Board of Education*, 152 W.Va. 761, 166 S.E.2d 150 (1969); *State ex rel. Fox v. City of Bluefield, Board of Trustees of Policeman's Pension or Relief Fund*,

148 W.Va. 369, 135 S.E.2d 262 (1964); *Cawley v. Beckley Board of Trustees of Fireman's Pension Fund*, 138 W.Va. 571, 76 S.E.2d 683 (1953).]

Counsel for respondents rely on *Taylor v. Cabell County Board of Education*, [*supra*] in support of their position on the issue in question. It is contended that because the Court followed the "gratuity rule" in that non-contributory retirement plan and allowed future benefits to be reduced it would do so in the instant contributory plan. With this, the Court can not agree. On the contrary, it is felt that *Taylor* is authority supporting petitioners' position. The Court therein definitely distinguished between a noncontributory and a contributory retirement system, and limited it's decision to the former. Also, the Court recognized the decisions of many other jurisdictions that support the conclusion of this Court. In addition, at page 770, after discussing the general rule holding non-contributory retirement plans to constitute gratuities, it is stated:

> "It would be an unjustified distortion of this general rule to apply it in cases where the laws providing for retirement and disability compensation are construed to require the recipients of such benefits to make valuable contributions as consideration for the benefits to be received."

The great weight of modern authority clearly supports the observations of the court below concerning the contractual relationship between the pensioner and the State. *See, e.g., Pineman v. Oechslin*, 494 F.Supp. 525 (D.Conn. 1980); *Marvel v. Danneman*, 490 F.Supp. 170 (D.Del. 1980); *Yeazell v Copins*, 98 Ariz. 109, 402 P.2d 541 (1965); *Brazelton v. Kansas Public Employees Retirement System*, 227 Kan. 443, 607 P.2d 510 (1980); *Opinion of the Justices*, 364 Mass. 847, 303 N.E.2d 320 (1973); *Campbell v. Michigan Judges Retirement Board*, 378 Mich. 169, 143 N.W.2d 755 (1966); *Sylvestre v. State*, 298 Minn. 142, 214 N.W.2d 658 (1973); *Miles v. Tennessee Consolidated Retirement System*, 548 S.W.2d 299 (Tenn. 1976); *Bakenhus v. City of Seattle*, 48 Wash.2d 695, 296 P.2d 536 (1956).

The Michigan Court, in discussing the implications of legislative changes in that state's judges' retirement system, stated:

> Here the judge voluntarily agrees to enter the system and pay the contributions, he does pay, and the State agrees to pay certain retirement benefits. There is, then, legal consideration, mutuality of agreement and mutuality of obligation. A contract is made. Accordingly, a problem of impairment of contract is involved here.
>
> * * *
>
> In this case plaintiffs, who had been judges and contributing members of the judges retirement system, elected to and did retire under the governing act. [T]hey, thereupon, ceased to be members of the system. When they so retired and ceased to be members of the system, their contract was completely executed and their rights thereunder became vested. These could not, thereafter, be diminished or impaired by legislative change of the judges retirement statute. . . .

*Campbell v. Michigan Judges Retirement Board,* 378 Mich. 169, 180-81, 143 N.W.2d 755, 757 (1966).

The Minnesota Supreme Court addressed the issue of legislative changes in state pension plans in a factual context nearly identical to the one before us. In *Sylvestre v. State,* 298 Minn. 142, 214 N.W.2d 658 (1973), six retired judges brought an action seeking declarations that a legislative change eliminating an escalator provision in their pension plan was an unconstitutional impairment of contract. The court, in its only syllabus point, held:

> Where the state by an act of the legislature has established by law retirement pay for district judges consisting of a portion of the judge's salary to be paid for the balance of his life upon voluntary retirement, contingent upon service as a judge for a specified number of years and voluntary retirement after reaching a specified age, and the judge performs his part of the offer through continuance in office, an enforceable contract arises upon completion of service by the judge in accordance

with the terms of the offer. Such offer may not be withdrawn so long as the judge continues performance according to the terms of the original offer, and the obligation assumed by the state may not constitutionally be impaired by changes in the terms of the offer less beneficial than those at the beginning of his service, either during its performance or after its completion.

We are influenced by the analysis in the above-cited authorities and conclude that the West Virginia Retirement System for Judges creates contractually vested property rights for retired and active participating plan members, and these rights are enforceable and cannot be impaired or diminished by the State. The Legislature's 1979 enactment of W.Va. Code § 51-9-6c (1981 Replacement Vol.) violates these contract rights and is, therefore, unconstitutional under section 10 of article I of the United States Constitution. We, therefore, concur in the reasoning of the circuit court in its issuance of the writ of mandamus and hold that W.Va. Code § 51-9-6c (1981 Replacement Vol.) is, by virtue of article I, section 10 of the United States Constitution, inapplicable to all retired and active members of the Retirement System for Judges who were participating in the system at the time of the Code provision's effective date.

Our inquiry does not end here, however. The appellants ask us to go beyond the scope of the circuit court's determination and decide the following questions:

1). "[I]s the Legislature forever foreclosed from correcting or amending its actions [with regard to pensions of this nature]?"

2). "[I]s [the] . . . State the guarantor of the solvency of the Judges' Retirement System[?]"

3). "May the State be forced into bankruptcy in order to revoke or reduce payment of retirement benefits?"

Our answers to these questions are found in the concepts of vested benefits and contractual rights. While an officer might not be vested for a full pension because of failure to complete the required number of years of service, there is

a contractual right to participate by way of contribution in the pension system as it exists at the time the participant enters the system, assuming, of course, that qualification continues and the duties of employment are satisfactorily fulfilled. The authorities have used various semantic approaches to describe how these rights become fixed, but the end result of these varying approaches is fairly uniform. Some courts have taken the approach that an employee's pension is vested at the commencement of employment, subject to divestment by a condition subsequent (e.g., the failure to complete the required years of service). *Brazelton v. Kansas Public Employees Retirement System, supra; Yeazell v. Copins, supra; Bakenhus v. City of Seattle, supra.* Other courts have taken an approach which has been labeled "limited vesting". *Public Employees' Retirement Board v. Washoe County, supra.* Still other courts have proceeded on a purely contractual basis. *Campbell v. Michigan Judges Retirement Board, supra.* No matter what label courts use to describe these fixed pension rights, the effect is virtually identical and was well stated by the Pennsylvania Court in *Hickey v. Pittsburg Pension Board*, 378 Pa. 300, 106 A.2d 233 (1954).

> The Legislature may strengthen the actuarial fibers but it cannot break the bonds of contractual obligations. The permissible changes, amendments and alterations provided for by the Legislature can apply only to conditions in the future, and never to the past. According to the cardinal principle of justice and fair dealings between government and man, as well as between man and man, the parties shall know prior to entering into a business relationship the conditions which shall govern that relationship. Ex post facto legislation is abhorred in criminal law because it stigmatizes with criminality an act entirely innocent when committed. The impairment of contractual obligations by the Legislature is equally abhorrent because such impairment changes the blueprint of a bridge construction when the spans are half way across the stream. 378 Pa. at 309, 106 A.2d at 237.

The clear import of the pronouncement in *Hickey* is that upon entering into a pension plan, participants have a contractual property interest which must be carefully guarded. As the Michigan Court noted in *Campbell, supra,* "[these pension benefits] should be deemed to include not only the benefits provided by statute at the time of entry into the contract . . . of retirement, but, also, those later added by statutory amendment. The legislature may add to but not diminish benefits without running afoul of [the] constitutional prohibition against impairment of the obligation of a contract." 378 Mich. at 181, 143 N.W.2d at 758.

Some courts have been willing to temper this strict view of contractual obligation by allowing amendments to pension plans affecting non-retired, participating employees if the amendments are reasonable. The touchstone in these cases, reasonableness, was described by the California Supreme Court as follows: "To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to the employees should be accompanied by comparable new advantages." *Betts v. Board of Administration,* 21 Cal.3d 859, 863, 582 P.2d 614, 617, 148 Cal.Rptr. 158, 161 (1978) (citations omitted). "[T]he purpose [is] keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system." *Id.* This approach has been adopted by other courts with a view towards preserving the pension system's flexibility and fiscal integrity. *See, e.g., Brazelton v. Kansas Public Employees Retirement System, supra; Public Employee's Retirement Board v. Washoe County, supra; Bakenhus v. City of Seattle, supra.* Other courts have vigorously rejected this approach. In *Yeasell v. Copins, supra,* the court stated that the theory "that an employee does not have the right to any fixed or definite retirement benefits but only to a substantial or reasonable pension is incompatible with the [contract theory]. A contract cannot be unilaterally modified nor can one party to a contract alter its terms without the assent of the other party, . . ." 98 Ariz. at 115,

402 P.2d at 545 (citations omitted). *See also, Michigan Judges Retirement Board v. Campbell, supra; Sylvestre v. State, supra.*

Emergent from these seemingly different positions is the proposition that rights fixed at the commencement of employment are simply contractual obligations. While some courts refuse to allow what amounts to substitute consideration, *Yeazell, supra,* other courts, in what we consider the better view, will allow a change in the plan if any disadvantages are counter-balanced by advantages, *i.e.,* substitute consideration. *Brazelton, supra.* It is also clear that any alterations to the pension system can only affect the rights of active members, and those alterations cannot work to the detriment of those active plan members. Any alterations must be based on the need to maintain the pension plan's flexibility and integrity. This, of course, brings into focus the appellant's question which expresses concern for the solvency and stability of the judge's retirement fund.

Part of the contract entered into between participating plan members and the State requires the State to deduct from judicial salaries six per cent for purposes of funding the trust which pays retirement benefits. W.Va. Code § 51-9-4 (1981 Replacement Vol.). The State Treasurer is the custodian of the trust fund and is required to post a bond to assure the proper performance of his duties as custodian of the fund. W.Va. Code § 51-9-3 (1981 Replacement Vol.). Thus, the maintenance of the trust fund is an integral part of the overall system of providing pensions to retired members of the judiciary. The maintenance of an actuarially-sound trust fund, a part of the contract with plan members, is threatened, however, by certain provisions in the system itself. W.Va. Code § 51-9-6 (1981 Replacement Vol.) sets out the provisions for determining entitlements to benefits. That Code section provides, in part, that if a judge has served at least ten years on the bench and has made payments into the trust fund, any time he spent as a prosecuting attorney in any county of the state may be used as years of service. While the plan credits former prosecuting attorneys with time spent in that office,

it does not seem to require them to pay into the trust fund for this non-judicial credited service time. This creates inequities and obvious equal protection problems. First, this unfunded provision depletes the trust fund of resources intended to pay retired judges who have made full payment into the fund. Second, on its face, it denies judges of the same class, those with prior non-judicial service, the same right to gratuitous service credit.

Similar problems have been considered and addressed in other states. For example, the Supreme Court of Delaware, in a relevant decision in the case of *In Re The State Employees' Pension Plan*, 364 A.2d 1228 (Del. 1976), held as follows:

> Implementation of the basic purpose and intent of the Pension Plan requires careful preservation of the Trust Fund for its intended beneficiaries— those individuals who have entered and remained in public service in reliance upon it and who have been obliged to contribute to it. The purpose and intent of the Plan and the Trust Fund is not served by a statute which provides for the payment of gratuitous pensions from the corpus of the Trust Fund created for the support of the contributory plan. Such action, in our view, can only weaken the confidence and dedication of employees who are required to contribute a portion of their salaries, year after year, to the Fund.
>
>           \*     \*     \*     \*
>
> That is not to say, however, that the General Assembly lacks the inherent power to grant a separate and individual pension award, with separate implementing appropriation, to a deserving person, out of gratitude or compassion or in the fulfillment of a moral obligation. Such power may well exist in an appropriate case. However, such cases, involving individual pension grants as gratuities payable by special appropriations out of the general funds of the State, must be distinguished from contributory pension plans such as ours, involving a Trust Fund and providing a form of deferred compensation which is a 'part of the

consideration for the contract of hire.' (Citations omitted). 364 A.2d at 1236.

We are impressed with the Delaware Court's reasoning and its applicability to the facts of our case.[2]

Inequitable benefit provisions built into the statute can impair the integrity of the pension fund and add to its cost. It is our conclusion that while the Legislature has the right to make reasonable alterations to the judicial pension fund, such alterations cannot impair the benefit level where there are extant statutorily-created inequities and special unfunded benefit provisions that affect the equal application of the law or the financial integrity or cost of the pension fund.

Legislative modifications to a pension plan must be reasonable, and the test for reasonableness is whether the alteration to the pension scheme serves to keep the system sound and flexible. *Brazelton, supra; Washoe, supra; Betts, supra.* Thus, beside the fact that the rights of retired plan members cannot be detrimentally altered at all, alterations to keep the trust fund stable should first be directed at threats to the trust fund's solvency. It seems apparent that alterations affecting contractual pension plan rights should be made in the least offensive manner. Removing the escalator provision in the plan for which the plan members have contracted while maintaining intact what amounts to an invasion of the trust does not constitute a reasonable alteration. While the law recognizes that states retain some reserve power to modify by statute existing contractual relationships when the public interest so requires, such modifications must be reasonable and necessary to serve important public purposes. *Allied Structural Steel Co. v. Spannus,* 438 U.S. 234, at 242, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978); *Marvel v. Dannemann,* 490 F. Supp. 170, at 175 (D.C. Del. 1980). It follows that when a

---

[2] These matters have been addressed and considered also by the United States Supreme Court in *Allied Structural Steel Co. v. Spannus,* 438 U.S. 234, 244-245, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978); *United States Trust Co. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977); and *Home Building and Loan Association v. Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934).

statutory modification attempts to change important provisions of an existing contract outside the limits of the reserved state powers, the legislation will impair obligations of the contract and will be declared unconstitutional.

Finally, we will not respond herein to the petitioner's specter of bankruptcy because there is no evidence, allegation, or representation appearing in the record that the State is in economic distress. A starting point for enquiry into such a contingency can be found in Note, *Public Employee Pensions in Times of Fiscal Distress*, 90 Harv. L. Rev. 992 (1977).

Accordingly, the judgment of the Circuit Court of Kanawha County awarding a preemptory writ of mandamus commanding Glen B. Gainer, Jr., Auditor of the State of West Virginia, and Larrie Bailey, Treasurer of the State of West Virginia, to issue and sign state warrants as sought by petitioners in the mandamus proceedings is affirmed, and the writ as ordered may issue.

*Affirmed.*