413 S.E.2d 143

**Larry MULLETT, Plaintiff Below, Appellee,**

v.

**The CITY OF HUNTINGTON POLICE PENSION BOARD, Defendant Below, Appellant**

**No. 20277.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1991.

Decided Dec. 18, 1991.

James Allan Colburn, Baer, Colburn & Morris, Huntington, for appellee.

Michael J. Farrell, Charlotte A. Hoffman, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, for appellant.

WORKMAN, Justice:

The City of Huntington Police Pension Board ("Pension Board" or "Board") appeals from a decision of the Circuit Court of Cabell County which directed it to immediately begin making pension payments to appellee Larry Mullett. The dispute in this case involves whether certain statutory provisions entitle Mr. Mullett, a retired Huntington police officer, to secure an early pension based on his enlistment with the West Virginia Air National Guard ("Guard") which coincided with a portion of the time when he was employed as a police officer. This issue of appellee's entitlement to an early pension [1] also involves a determination of which statutory provisions control the outcome of this case: those in effect on Mr. Mullett's date of hire or those in place on the date on which he applied for pension benefits. Our review of this case compels the conclusion that the statutory provisions, as amended, and in effect on the date when Mr. Mullett applied for his pension are the controlling statutes rather than those in effect on the date of his hire as the circuit court found. Accordingly, the decision of the circuit court is hereby reversed.

Mr. Mullett joined the Huntington Police Department ("Department") on April 23, 1968, and remained a full-time employee of the Department until April 1991. On July 23, 1977, while an employee with the Department, Mr. Mullett enlisted in the Guard. His enlistment entailed weekend drills, annual summer camp, and various other duty assignments. Once enlisted, appellee remained with the Guard throughout the remainder of his tenure with the Department.

On February 12, 1990, Mr. Mullett applied for a pension pursuant to W.Va.Code §§ 8–22–25 and 8–22–27 (1985), originally seeking a retirement date of October 1, 1990. Mr. Mullett based his application for immediate pension benefits on his contention that he had satisfied the statutory requirements of W.Va.Code §§ 8–22–25 and 8–22–27 which require, *inter alia*, one year or more of active duty as a member of the Guard. West Virginia Code § 8–22–25(c) provides in pertinent part:

> Any member ... whose service has been interrupted by duty with the armed forces of the United States as provided in section twenty-seven [§ 8–22–27] of this article prior to the first day of July, one thousand nine hundred eighty-one, shall be eligible for retirement pension bene-

---

**1.** By using the phrase "early pension," we are referring to the fact that the pension statutes at issue (W.Va.Code §§ 8–6–20 (1968) and 8–22–25 (1985)) provide for an individual generally to apply for pension benefits upon attaining the age of fifty unless certain exceptions are met. One of those exceptions is service in the United States armed forces provided that such service fulfills certain statutory requirements.

fits immediately upon retirement, regardless of his age, if he shall otherwise be eligible for such retirement pension benefits.

To define the term "interrupted" as referred to in W.Va.Code § 8–22–25(c), Mr. Mullett looked to W.Va.Code § 8–22–27 which states that:

Any member ... who has been required to or shall at any future time be required to enter the armed forces of the United States by conscription, by reason of being a member of some reserve unit of the armed forces or a member of the West Virginia national guard or air national guard, *whose reserve unit or guard unit is called into active duty for one year or more,* or who enlists in one of the armed forces of the United States during hostilities, and who upon receipt of an honorable discharge from such armed forces presents himself for resumption of duty to his appointing municipal official within six months from his date of discharge, and is accepted by the pension board's board of medical examiners as being mentally and physically capable of performing his required duties ... shall be given credit for continuous service in said police ... department.

W.Va.Code § 8–22–27(a)(2) (emphasis added).

The Pension Board denied Mr. Mullett's application for pension benefits based on its position that Mr. Mullett's employment with the Department had not involved any "interruption" as contemplated by W.Va. Code §§ 8–22–25 and 8–22–27. The Pension Board took the position that the one-year or more "interruption" required by W.Va.Code § 8–22–27 implied a continuous chronological year of active service rather than, as Mr. Mullett contended, an accumulation of days sufficient to meet the one-year prerequisite.

When the Pension Board denied Mr. Mullett's application, appellee initiated a civil action in the Circuit Court of Cabell County predicated on his contention that he was wrongly denied benefits. On March 8, 1991, the circuit court entertained oral argument on the Pension Board's motion for summary judgment. During the course of that hearing, the court suggested that W.Va.Code §§ 8–22–25 and 8–22–27 were not the controlling statutes with regard to Mr. Mullett's entitlement to benefits. By order dated March 21, 1991, the circuit court ordered the Pension Board to reconvene and reconsider the pension application of appellee based on the statutes in effect on April 23, 1968, appellee's date of hire.[2]

Pursuant to the circuit court's order, the Pension Board reconvened on March 29, 1991, for the purpose of taking additional evidence from Mr. Mullett and hearing arguments from counsel. Applying the statutory provisions which were in effect in 1968,[3] the Pension Board again denied Mr.

2. Without further elaboration, the circuit court noted in its order dated March 21, 1991, that "*Wagoner v. Gainer,* [167 W.Va. 139], 279 S.E.2d 636 (W.Va.1981) is applicable to the instant fact situation." Since *Wagoner* was the sole precedential reference contained in that order, we must conclude that the circuit court viewed *Wagoner* as requiring it to apply the pension statute in effect on appellee's date of hire. In a later order dated April 19, 1991, the court did in fact expressly state that the 1968 statute was "the applicable statute to be applied under the doctrine of *Wagoner....*"

3. The statute in effect in 1968 when Mr. Mullett was hired to the Department which controlled credit for military service was W.Va.Code § 8–6–20. That statute provided, in pertinent part, that:

Any member of a municipal ... police department who is entitled to benefits of said [pension] fund, ... whose service has been interrupted by duty with the armed forces of the United States as hereinafter provided, shall be eligible for retirement benefits immediately upon retirement, regardless of his age, if he shall be otherwise eligible for such benefits.

Any member of any ... police department covered by this article who has been required to or shall at any future time be required to enter the armed forces of the United States by a conscription, by reason of being a member of some reserve unit of the armed forces, or a member of the West Virginia National Guard, or who enlists in one of the armed services of the United States during hostilities, and upon his receipt of an honorable discharge from such armed forces presents himself for resumption of duty to his appointing municipal official within six months from the date of discharge, and is accepted by the pension board doctors as being mentally and physically capable of performing his required duties

Mullett's application for benefits. The denial was based on the Board's findings that appellee

1. [W]as not required to enter the armed forces of the United States during hostilities by a conscription.
2. [Was] not required to enter the armed forces of the United States during hostilities as a member of some reserve unit of the armed forces.
3. [Was] not required to enter the armed forces of the United States during hostilities as a member of the West Virginia national guard.
4. [D]id not enlist in the armed forces of the United States during hostilities.

Applying the 1968 statute, the Board further found that Mr. Mullett, "by his conduct," did not consider his service in the Guard to be "interruptions" as defined by W.Va.Code § 8-6-20 since he did not:

(a) Report to the City of Huntington, his appointing municipal official or this Board that he had 'received an honorable discharge from the armed forces of the United States' during his service as a police officer for the City of Huntington;

(b) 'Upon his receipt of an honorable discharge from such armed forces present himself for resumption of duty to his appointing municipal official within six months from the date of discharge ...;'

(c) Present himself to the 'pension board doctors' for an examination to determine whether he was 'mentally and physically capable of performing his required duties as a member of such ... police department.'

Following the Pension Board's reconsideration of Mr. Mullett's application pursuant to those statutory provisions in effect on Mr. Mullett's date of hire and the Board's second denial of benefits, the circuit court held a further hearing on this matter on April 9, 1991. As a result of that hearing, the court granted Mr. Mullett's motion for summary judgment and by order dated April 19, 1991, directed that the

Pension Board immediately begin paying benefits to Mr. Mullett. By separate order also entered on April 19, 1991, the circuit court granted Mr. Mullett's attorney's fees in connection with this matter. It is from these two orders entered on April 19, 1991, that the Pension Board now appeals.

The initial issue to be resolved in this case of first impression is whether the circuit court correctly ruled that the statute in effect on the date of Mr. Mullett's hire is the applicable statute for determining his entitlement to pension benefits. The circuit court based its decision on a previous decision of this Court, *Wagoner v. Gainer*, 167 W.Va. 139, 279 S.E.2d 636 (1981). At issue in *Wagoner* was the Legislature's enactment of a provision which froze retirement benefits for retired justices and judges based on prior salary levels while providing for increases in the salaries of active justices and judges. This Court determined in *Wagoner* that the Legislature's attempt to prevent retired judges from receiving the benefit of salary increases given to active judges was unconstitutional under an impairment of contract analysis. 167 W.Va. at 150-151, 279 S.E.2d at 646.

In *Wagoner*, this Court cited the Michigan case of *Campbell v. Michigan Judges Retirement Board*, 378 Mich. 169, 143 N.W.2d 755 (1966), as being on " 'all fours' with the instant case and exemplif[ying] the modern and majority rule." 167 W.Va. at 146, 279 S.E.2d at 641. Given the similarity of the two cases, *Wagoner* quoted *Campbell* extensively regarding the "implications of legislative changes" in a retirement system which affected state judges:

'Here the judge voluntarily agrees to enter the system and pay the contributions, he does pay, and the State agrees to pay certain retirement benefits. There is, then, legal consideration, mutuality of agreement and mutuality of obligation. A contract is made. Accordingly, a problem of impairment of contract is involved here....

....

as a member of such ... police department, shall be given credit for continuous service in

said ... police department, and his pension rights shall be governed as herein provided.

In this case plaintiffs, who had been judges and contributing members of the judges retirement system, elected to and did retire under the governing act. [...] [T]hey, thereupon, ceased to be members of the system. *When they so retired and ceased to be members of the system, their contract was completely executed and their rights thereunder became vested. These could not, thereafter, be diminished or impaired by legislative change of the judges retirement statute. '*

167 W.Va. at 148, 279 S.E.2d at 642 (quoting *Campbell,* 143 N.W.2d at 757) (emphasis supplied). The *Campbell* court concluded that

'[these pension benefits] should be deemed to include not only the benefits provided by statute at the time of entry into the contract [and] of retirement, but, also, those later added by statutory amendment. The legislature may add to but not diminish benefits without running afoul of [the] constitutional prohibition against impairment of the obligation of a contract.'

167 W.Va. at 151, 279 S.E.2d at 644 (quoting *Campbell,* 143 N.W.2d at 758).

The *Wagoner* court noted that "[s]ome courts have been willing to temper this strict view of contractual obligation by allowing amendments to pension plans affecting non-retired, participating employees if the amendments are reasonable." 167 W.Va. at 151, 279 S.E.2d at 644. The Court explained further that any amendments "must be based on the need to maintain the pension plan's flexibility and integrity." *Id.* Adopting the test of reasonableness, the *Wagoner* court ruled that "[l]egislative modifications to a pension plan must be reasonable, and the test for reasonableness is whether the alteration to the pension scheme serves to keep the system sound and flexible." 167 W.Va. at 154, 279 S.E.2d at 645.

While the *Wagoner* decision provides an analytical basis with respect to the case at bar, it does not squarely address the issue to be resolved here: whether the statute in effect on the date of Mr. Mullett's hire or the date on which he applied for pension benefits controls the outcome of this case. The circuit court's conclusion that the *Wagoner* ruling provided the basis for holding that the statute in effect on appellee's date of hire controlled [4] must have originated, in part, from the language in that opinion which describes the contractual nature of a pension. While *Wagoner* did note that "upon entering into a pension plan, participants have a contractual property interest which must be carefully guarded," neither that statement nor any other ruling in *Wagoner* supports the circuit court's conclusion that the pension statute in effect on Mr. Mullett's date of hire is the statute to be applied to this case. 167 W.Va. at 150, 279 S.E.2d at 643.

Both the *Wagoner* case and the *Campbell* case involved legislative amendments to retirement systems which affected individuals who had already retired. This is a critical factual distinction with respect to Mr. Mullett's case as the legislative amendment involved here was made in 1985 while appellee was still an *active* employee. The *Campbell* court explained in terms of contract law the effect of retirement on the appellant judges: "When they so retired and ceased to be members of the system, their contract was completely executed and their rights thereunder became vested." 143 N.W.2d at 757. Based on the vesting of the judges' contractual rights, those rights "could not, thereafter, be diminished or impaired by legislative change of the judges retirement statute." *Id.* As the *Wagoner* court concluded, amendments to a pension plan which affect retired individuals constitute an impairment of contract due to the vested nature of the contractual rights at issue. *See* 167 W.Va. at 155, 279 S.E.2d at 646.

Completely lacking in this case is any vesting of rights on appellee's behalf in 1985, the last year in which W.Va.Code §§ 8–22–25 and 8–22–27 were amended. As we recognized in *State ex rel. Fox v. Board of Trustees of Policemen's Pension,* 148 W.Va. 369, 135 S.E.2d 262 (1964),

The right to a pension for a member of a municipal fire department or police department is based upon and created by

4. *See* n. 2, *supra.*

... statute [then W.Va.Code § 8–6–20] and such right accrues to or vests in such member only when all the statutory conditions are performed and all its requirements are complied with and satisfied. *It is then and only then that a vested right to such pension accrues.* *Id.* 148 W.Va. at 373, 135 S.E.2d at 264 (citing *State ex rel. Frye v. Bachrach*, 175 Ohio St. 419, 195 N.E.2d 803, [806] [1964] and emphasis supplied). Until such time as Mr. Mullett was entitled pursuant to the applicable statute to apply for pension benefits, his rights were clearly not vested. *See Fox*, 148 W.Va. at 373, 135 S.E.2d at 264; *accord Wagoner*, 167 W.Va. at 146, 279 S.E.2d at 641 ("in a contributory pension plan, the pensioners' rights vest when all the conditions entitling them thereto have been fulfilled").

■ A member of a municipal police department has no vested right to an award of pension benefits from the fund before the conditions for retirement imposed by statute have been met or satisfied. Furthermore, when a municipal police officer retires and ceases to be a contributing member to a pension plan, his rights pursuant to such plan are vested and the pension contract becomes fully executed rather than executory.

■ As *Wagoner* discussed, while the contractual rights of a retired individual cannot be altered given the resulting impairment of contract, the same rule does not automatically apply to amendments which affect the rights of non-retired employees. *See* 167 W.Va. at 151, 279 S.E.2d at 644. Provided that the amendments are reasonable, amendments to a pension plan which affect active, participating employees may be enacted. Accordingly, we determine that during the time period when a pension contract is merely executory with respect to a particular individual due to the fact that he/she is still an active, participating member, the Legislature may amend the plan provided that any amendments survive a test of reasonableness.

■ The amendments[5] at issue in this case added, *inter alia*, the following language to W.Va.Code § 8–22–27: "whose reserve unit or guard unit is called into active duty for one year or more." In addition, the active duty requirement necessary to invoke credit for military service had to have been fulfilled prior to July 1, 1981. *See* W.Va.Code § 8–22–25(c). The obvious intention of the Legislature in enacting the amendment which requires "one year or more" of active duty in a guard unit to entitle a participating public employee to military credit which in turn permits early retirement[6] was to clarify that a substantial interruption was required to qualify for an early pension. Appellant argues that the 1968 statute would have permitted a guardsman with merely one day of active service, who otherwise qualified under W.Va.Code § 8–6–20,[7] to be entitled to pension benefits regardless of his age.[8] In enacting the one-year active duty requirement for guardsmen, the Legislature clearly sought to avoid any potential draining of the pension fund by individuals who might qualify for early retirement based on such a limited amount of military service. Thus, a second and interrelated intention underlying the one-year requirement was to ensure the continuing financial integrity of the pension system at issue here.

To survive constitutional challenge, as we stated in *Wagoner*, legislative modifications to a pension plan must be reasonable.

---

**5.** When contrasted to the statutory language in effect in 1968 (W.Va.Code § 8–6–20), the 1985 pension statutes (W.Va.Code §§ 8–22–25 and 27) contain certain amendments. While many of these "amendments" were actually enacted prior to 1985, for the purposes of this opinion and legal analysis we will deal with these statutory changes summarily by looking to the statutes as amended in 1985.

**6.** See n. 2, *supra.*

**7.** To qualify initially for pension benefits, twenty years service as a police officer would still have been required. *See* W.Va.Code § 8–6–20.

**8.** We do not necessarily accept this contention. The whole tenor of the earlier statute suggests that a substantial interruption of service and a discharge from the military, neither of which occurred here, were required as a prerequisite to early retirement benefits. *See* W.Va.Code § 8–6–20 (1968).

In *Wagoner*, we defined the test for reasonableness as whether the alteration to the pension scheme serves to keep the system sound and flexible. Recognizing that this definition is somewhat elusive, we wish to expand this definition consistent with what has been recognized as the "California rule:"

> 'there is a strict limitation on the conditions which may modify the pension system in effect during employment.... " 'An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system.... Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages.' " '

*Brazelton v. Kansas Pub. Employees Retirement Sys.*, 227 Kan. 443, 607 P.2d 510, 518 (1980) (citations and emphasis omitted) (quoting *Betts v. Board of Admin.*, 21 Cal.3d 859, 863, 148 Cal.Rptr. 158, 161, 582 P.2d 614, 617 (1978).

Given that the amendment at issue was undoubtedly enacted for the purpose of keeping the pension system sound and flexible,[9] it necessarily follows that the alteration, as required by the "California rule," "bears some material relation to the theory of a pension system and its successful operation." *See Brazelton*, 607 P.2d at 518. Similar to our statement in *Wagoner* that amendments to a pension system "cannot work to the detriment of ... active members," the "California rule" requires that "changes which result in disadvantage to employees should be accompanied by comparable new advantages." We think the key concern raised by both *Wagoner* and the "California rule" statements is disadvantage or detriment to the active members as a *group* rather than on an individual basis. Since the pension fund at issue is arguably being protected from the potential draining effect of massive early retirement, we can find no detriment or disadvantage to the active members as a group. Moreover, the amendment does not work an individual disadvantage as to appellee in that his rights to his pension are neither eliminated nor substantially changed. *See Brazelton*, 607 P.2d at 514. Appellee will still get the full pension benefits he anticipated, just not as soon as he had hoped. We accordingly determine that the amendment at issue survives the test of reasonableness and does therefore not result in any impairment of contract.

 We find appellee's suggestion that the one-year requirement found in W.Va.Code § 8–22–27 does not mean a continuous, chronological year of service to be totally without merit. As we noted in *Steeley v. Funkhouser*, 153 W.Va. 423, 169 S.E.2d 701 (1969), the word "year," when contained in a statute, is routinely construed as referencing a calendar year. *See id.* 153 W.Va. at 427–28, 169 S.E.2d at 704. We see no reason to alter this interpretation with respect to the one-year requirement imposed by W.Va.Code § 8–22–27.

Based on the reasoning set forth above, we conclude first that *Wagoner* does not require the application of the pension statute in effect on Mr. Mullett's date of hire. Given the executory nature of his contractual rights to a pension until his retirement from the system, it stands to reason that the statute in effect on the date of a qualified individuals's submission of his/her pension application is the appropriate statute from which to determine an applicant's right to benefits. This rule, however, is

---

9. *See* statement of legislative intent found in W.Va.Code § 51–9–1b (Supp.1991) pertaining to judicial retirement system. Though the statutes at issue do not contain a similar observation concerning the legislative objective "of protecting the fiscal responsibility and soundness of the moneys required for payment," we feel certain that a parallel objective necessarily underlies the statutes creating the pension fund under consideration here.

subject to the qualification that any amendments which have been enacted since the date of an applicant's entry into the pension system which affect his rights must survive the test of reasonableness as explained above. Based on our finding that the amendment to W.Va.Code § 8–22–27, which entails one year of continuous service, survives this test of reasonableness, we hereby determine that the controlling statutes in this case are W.Va.Code §§ 8–22–25 and 8–22–27—those statutes in effect on the date Mr. Mullett applied for pension benefits.

Since the circuit court found and appellee does not dispute that he did not serve active duty in the Guard for a continuous chronological year, we determine that appellee was not entitled to pension benefits when he applied in February 1990. However, since Mr. Mullett has already retired, he would be precluded by our holding in *Board of Trustees of Policemen's Pension* from reapplying for pension benefits when he turns fifty. *See* 148 W.Va. at 374, 135 S.E.2d at 265 and Syl.Pt. 2; *see also* W.Va.Code § 8–22–25. Given the first impression nature of this case and the uncertainty of its resolution at the time of appellee's retirement, appellee should not be barred from reapplying for pension benefits upon obtaining the age of fifty. To do otherwise would clearly work an unnecessary and unintended injustice.

Based on the foregoing, we hereby reverse the order of the Circuit Court of Cabell County which directed the Pension Board to immediately begin paying appellee benefits as well as the order which granted appellee his attorney's fees.

Reversed.