NOT DESIGNATED FOR PUBLICATION

No. 117,346

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KEVIN T. DAVIS,
*Appellant*,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Opinion filed February 2, 2018. Affirmed.

*Kevin T. Davis*, appellant pro se.

*Erin E.M. Sizemore*, of Kansas Department for Children and Families, for appellee.

Before GREEN, P.J., MALONE and ATCHESON, JJ.

PER CURIAM:  The Kansas Department for Children and Families (DCF) determined that Kevin T. Davis was a perpetrator of sexual abuse based upon sexual contact he had with a minor. Davis appealed DCF's determination to the administrative hearing section of DCF, which granted summary judgment in favor of DCF. The trial court affirmed the summary judgment ruling. Davis now appeals, making several legal arguments why DCF's perpetrator of sexual abuse determination should be reversed. Nevertheless as explained below, none of Davis' arguments are persuasive. Therefore, we affirm.

1

On August 1, 2011, the Kansas Department of Social and Rehabilitation Services (SRS) conducted an investigation along with law enforcement into 13-year-old J.D.'s allegations that her mother's boyfriend, Davis, had sexually abused her. Debra Curley, the SRS caseworker assigned to the case, determined that J.D.'s allegations of sexual abuse were substantiated and supported by clear and convincing evidence based upon the following:

> "Due to [J.D.'s] description of the abuse to investigator at EMCU, the police report showing [Davis] had contact with [J.D.], [J.D.'s] consistent statements to other professionals, *the taped conversation between Davis, Mother, and [J.D.], where [it] is stated he wouldn't touch her anymore*, and stated he didn't rape her but left out the fingered part . . . ." (Emphasis added).

SRS mailed Davis a notice that it had found him a substantiated perpetrator of sexual abuse on October 10, 2011. The result of the substantiated perpetrator of sexual abuse determination was that Davis' name was placed on an abuse and neglect central registry, which in turn prohibited him from working, volunteering, or residing at child care facilities. See K.S.A. 2016 Supp. 65-516(a)(3).

On November 8, 2011, Davis requested a hearing before the administrative hearing section of SRS to contest the perpetrator of sexual abuse determination. One of Davis' initial arguments was that SRS's appeal summary was not filed within 15 days of his request for a fair hearing as required by K.A.R. 30-7-75. The presiding officer of the administrative hearing section rejected this argument. Moreover, eventually the presiding officer entered a default order against Davis for failing to appear at a hearing to argue his case. The State Appeals Committee affirmed this ruling. Davis then appealed to the trial court, arguing that he never received notice about the hearing where he failed to appear.

On October 20, 2014, the trial court reversed the presiding officer's default order. The trial court found that the presiding officer's actions were unreasonable because Davis, who had briefly been represented by counsel, had not actually received notice of the hearing; the notice of the hearing was sent to counsel who no longer represented him and had, in fact, died. The trial court then "remanded to the administrative hearing office for the presiding officer to schedule a new prehearing conference pursuant to administrative procedures law." The trial court further recognized, however, that Davis' ongoing criminal case "could affect the outcome of the administrative process."

On November 17, 2014, upon remand from the trial court, the presiding officer stayed Davis' administrative case pending the result of his criminal case. The presiding officer determined that staying Davis' administrative case was reasonable given that his administrative and criminal cases both stemmed from the same allegations of sexual abuse of J.D. Ultimately, in February 2015, Davis was found guilty of two counts of aggravated indecent liberties with a child in Sedgwick County case No. 12 CR 681. Of note, no documents related to Davis' criminal case are in the record on appeal. Still, the parties do not dispute the existence of the two convictions of aggravated indecent liberties with a child.

On April 6, 2015, SRS, now renamed DCF, moved for summary judgment. DCF argued that the presiding officer could summarily affirm its perpetrator of sexual abuse determination against Davis because "[t]he facts regarding the allegations . . . ha[d] been fully determined in [Davis'] criminal proceeding." Davis, acting pro se, responded to DCF's summary judgment motion by arguing (1) that the presiding officer should not rely on his criminal convictions because he was wrongly convicted in his criminal case; and (2) that the presiding officer should otherwise continue to stay the administrative proceeding until after he had finished appealing his criminal convictions. The presiding officer rejected Davis' arguments. He found that because Davis was found guilty beyond a reasonable doubt of committing sex acts with J.D., which were the same sex acts at

3

issue in the administrative case, the reasonable doubt finding in the criminal case satisfied the clear and convincing evidence burden in the administrative case.

Following this ruling, Davis moved for rehearing where he repeated his previous arguments. Also within this motion, Davis stated that the trial court had previously "remanded back to [SRS' administrative hearing section] to schedule a new prehearing conference . . . ." The presiding officer denied this motion, and Davis filed a petition for review with the State Appeals Committee. The State Appeals Committee rejected his arguments, adopting the presiding officer's factual findings and legal conclusions.

Next, Davis filed a petition for review with the trial court. Davis again repeated his earlier arguments. At the hearing on his petition, Davis made two further arguments. First, he argued that DCF's case against him was moot given that Curley no longer worked with DCF. Second, he argued that the court should consider the fact that shortly after his arrest, J.D. had signed a sworn affidavit where she stated she had lied about him sexually abusing her.

DCF countered (1) that whether Curley was no longer employed with it was irrelevant as to whether its case was moot and (2) that it considered J.D.'s sworn affidavit when it made its perpetrator of sexual abuse determination but doubted its veracity. The attorney for DCF explained how "[J.D.] was interviewed by Detective Virgil Miller about that recantation, and she was unable to explain many of the words used in the affidavit." He concluded that although "it may have had her signature on [the affidavit]," J.D. did not "understand[] what she was signing." He further noted that J.D.'s affidavit was also considered in Davis' "criminal case in which [he] was convicted of aggravated indecent liberties with that same minor victim."

The trial court ultimately denied all relief sought by Davis. The trial court determined that the caselaw Davis cited did not support his arguments about staying or

4

mooting the case. The court also stated that it had researched Davis' issues "exhaustively" but determined no support for any of his arguments. Finally, the court ruled that "the evidence overwhelmingly support[ed] the DCF."

Following this ruling, Davis moved for reconsideration with the trial court. In this motion, Davis argued that DCF's case was moot because J.D. was now 18 years old, which meant she could not "be affected by the agency finding of sexual abuse." He also argued that the trial court failed to adequately address his argument that he was entitled to a prehearing conference based upon his previous successful petition for review to the trial court. As to Davis' argument concerning the lack of a prehearing conference, DCF responded that a prehearing conference became unnecessary once it moved for summary judgment based upon Davis' convictions in his criminal case. DCF asserted that it acted in accordance with K.S.A. 77-506 of the Kansas Administrative Procedure Act (KAPA), which allows a state agency to convert one type of proceeding into another type of proceeding. Davis filed a response, arguing that he never received proper notice stating that the proceeding had been converted.

The trial court held a hearing on Davis' motion for reconsideration. At the conclusion of the hearing, the trial court rejected Davis' arguments regarding mootness but took Davis' argument regarding the lack of a prehearing conference under advisement. In the end, however, the trial court entered an order in which it rejected this argument as well.

In doing so, the trial court noted that Davis was properly served with DCF's summary judgment motion, that Davis responded to DCF's motion for summary judgment, that his response did not include an argument that he was entitled to a prehearing conference, and that he had never asserted the lack of a prehearing conference "prejudiced him or his case." The trial court further noted that under K.S.A. 77-506, the presiding officer was allowed "to convert the proceedings to a summary judgment

5

proceeding." It concluded: "The action was converted to a summary judgment action when DCF filed its motion and when Mr. Davis received adequate notice and responded. . . . The prehearing conference became unnecessary and could be disposed of when the action was converted."

*Did the Trial Court Err By Affirming the Department For Children and Families' Perpetrator of Sexual Abuse Determination?*

Davis complains that the trial court erred when it affirmed DCF's perpetrator of sexual abuse determination because the presiding officer at the administrative hearing was barred from granting summary judgment in DCF's favor for several reasons. In essence, Davis' complaints about why summary judgment was inappropriate can be separated into two categories: (1) arguments that involve procedural errors; and (2) arguments that involve mootness. Concerning his procedural error complaints, Davis argues that DCF failed to comply with K.A.R. 30-7-75 when filing an appeal summary, that the presiding officer failed to comply with K.S.A. 77-506 when converting his case from prehearing conference proceedings to summary judgment proceedings, and that he was otherwise entitled to a prehearing conference. Concerning his mootness complaints, Davis argues that DCF's case against him is moot because Curley no longer works at DCF and because J.D. is now over 18 years old, i.e., she is now legally an adult. Davis argues that based upon the procedural errors and mootness, the trial court should not have affirmed the agency's determination. Thus, he argues that he is entitled to reversal of DCF's perpetrator of sexual abuse determination against him.

DCF responds that for a variety of reasons none of Davis' complaints have merit. As a result, it requests that this court affirm the trial court's decision.

6

*Standard of Review*

Unless otherwise stated, the scope of judicial review over state agency actions is controlled by the Kansas Judicial Review Act (KJRA). See K.S.A. 2016 Supp. 77-603(a); *Ryser v. Kansas Bd. of Healing Arts*, 295 Kan. 452, 458, 284 P.3d 337 (2012). Moreover, appellate courts exercise the same statutorily limited scope of review under K.S.A. 2016 Supp. 77-621 of the KJRA as does the trial court. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010). In relevant part, K.S.A. 2016 Supp. 77-621 states:

"(a) Except to the extent that this act or another statute provides otherwise:

(1) The burden of proving the invalidity of agency action is on the party asserting invalidity; and

(2) the validity of agency action shall be determined in accordance with the standards of judicial review provided in this section, as applied to the agency action at the time it was taken.

. . . .

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

(4) the agency has erroneously interpreted or applied the law;

(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

. . . .

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

(8) the agency action is otherwise unreasonable, arbitrary or capricious.

. . . .

"(e) In making the foregoing determinations, due account shall be taken by the court of the rule of harmless error."

To the extent that Davis' arguments involve statutory interpretation, statutory interpretation is a question of law over which appellate courts have unlimited review. See *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015). The most fundamental rule while interpreting statutes is that the intent of the Legislature governs; courts must first look to the plain language of a statute to determine the Legislature's intent. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

*Preservation*

Before addressing Davis' underlying arguments, the first issue this court must consider is whether Davis' arguments have been properly preserved for review. When appealing an administrative decision, parties may only raise arguments that they first raised at the administrative level. K.S.A. 2016 Supp. 77-617; *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 411, 204 P.3d 562 (2009). Furthermore, it is a rule of this court that issues not raised before the trial court will not be considered for the first time on appeal absent an exception and an explanation by the appellant why that exception applies. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011); see Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 35).

Once more, Davis' three procedural arguments are as follows: (1) that DCF failed to timely file its appeal summary in accordance with K.A.R. 30-7-75; (2) that the presiding officer failed to comply with K.S.A. 77-506 when it converted the prehearing conference proceedings into summary judgment proceedings; and (3) that based upon the trial court remanding to the presiding officer for a prehearing conference following his first petition for review, he was entitled to a prehearing conference before the presiding officer could enter summary judgment.

Yet, regarding Davis' first procedural argument, Davis has very clearly failed to preserve this argument for appeal. Davis complained about DCF failing to timely file its appeal summary as required by K.A.R. 30-7-75 to the presiding officer before filing his first petition for review to the trial court in which he complained about the default order. After the presiding officer rejected this argument, however, Davis never repeated this argument below. In other words, Davis is raising his argument about the appeal summary not being timely filed for the first time since the presiding officer rejected that argument. Davis never raised this argument before the trial court. Because Davis is raising an argument he did not raise before the trial court, this argument is not properly before this court. See *Wolfe Electric, Inc.*, 293 Kan. at 403.

Regarding Davis' second and third procedural arguments, both arguments involve the fact he did not receive a prehearing conference. Nevertheless, as noted by the trial court in denying Davis' motion for reconsideration, Davis did not argue that the presiding officer should deny DCF's summary judgment motion based upon his belief that he had a right to a prehearing conference. To review, when challenging DCF's summary judgment motion at the administrative level, Davis argued that the presiding officer should deny the motion because he was wrongly convicted in his criminal case and because he was still appealing the result of his criminal case. Davis did not make any arguments about procedural errors while challenging DCF's summary judgment motion.

Indeed, the closest Davis came to making a procedural argument at the administrative level is when he stated that the trial court had previously remanded to DCF for a prehearing conference in his motion for reconsideration before the administrative hearings section and in his petition for review before the State Appeals Committee. Yet, these were merely single statements without any argument. At the administrative level, Davis' arguments always focused on his belief that he was wrongly convicted in his

9

criminal case and his desire to stay the case until his criminal case had been fully decided.

As a result, Davis did not actually argue that DCF's summary judgment motion should have been denied based upon any issues related to not having a prehearing conference until he moved for the trial court to reconsider its ruling affirming DCF's perpetrator of sexual abuse determination. Thus, by failing to raise them at the administrative level, Davis' arguments regarding whether the presiding officer properly complied with conversion procedures and whether he was entitled to a prehearing conference based upon the trial court's original remand order are not properly before this court. See K.S.A. 2016 Supp. 77-617; *Kingsley*, 288 Kan. at 411.

Because none of Davis' procedural arguments are properly before this court, this court may reject his procedural arguments on this basis alone. All the same, it is worth mentioning that even if Davis' procedural arguments were properly before this court, he would still not be entitled to reversal of DCF's perpetrator of sexual abuse determination as his procedural arguments are unpersuasive for other reasons as well.

*Procedural Arguments*

First, Davis has failed to establish that he was prejudiced by any error resulting from DCF's failure to timely file its agency summary in compliance with K.A.R. 30-7-75's 15-day time limit. As noted, K.S.A. 2016 Supp. 77-621(e) of the KJRA states that when reviewing an agency's action, "due account shall be taken by the court of the rule of harmless error." Thus, reversal of an agency action is not necessary unless an appellant suffered harm.

K.A.R. 30-7-75 states that "within 15 days" after an appellant's request for a fair hearing, DCF "shall furnish the appellant and the administrative hearings section with a

summary setting forth" certain information about the appellant's case. In his brief, Davis alleges DCF's untimely appeal summary resulted in DCF losing jurisdiction over his case. Thus, the harm Davis alleges he suffered is DCF's continued prosecution of his case despite a lack of jurisdiction to do so. While a quick review of the record establishes that although DCF's appeal summary was untimely filed, a review of K.A.R. 30-7-75 establishes that it is a directory provision that is nonjurisdictional in nature.

Once again, Davis requested a fair hearing to contest DCF's determination that he was a perpetrator of sexual abuse on November 10, 2011. DCF did not file its appeal summary until November 29, 2011. Excluding the day Davis filed his request for fair hearing, as well as taking into account that the 15th day occurred during Thanksgiving weekend, a legal holiday, DCF should have filed the appeal summary by the end of Monday, November 28, 2011. See K.S.A. 2016 Supp. 77-503(c) (explaining time computation under KAPA). Thus, Davis has correctly argued that DCF's appeal summary filed on Tuesday, November 29, 2011, was one day late.

Even so, Davis has not cited any law in support for his proposition that DCF's untimely appeal summary automatically resulted in a loss of jurisdiction. Moreover, caselaw clearly does not support his argument. For example, in *Expert Environmental Control, Inc. v. Walker*, 13 Kan. App. 2d 56, 58, 761 P.2d 320 (1988), this court held that an agency does not lose jurisdiction when an agency fails to comply with a statutory time limit that is merely directory as opposed to mandatory. The *Expert Environmental Control* court explained:

> "'In determining whether a legislative provision is mandatory or directory, it is a general rule that where strict compliance with the provision is essential to the preservation of the rights of parties affected and to the validity of the proceeding, the provision is mandatory, *but where the provision fixes a mode of proceeding and a time within which an official act is to be done, and is intended to secure order, system and dispatch of the public business, the provision is directory*.' [Citation omitted.]"

11

The *Expert Environmental Control* court further explained that the lack of "'negative words requiring that an act shall be done in no other manner or at no other time than that designated'" and lack of penalty provision indicates that the statute at issue is directory. 13 Kan. App. 2d at 58.

Additionally, there are specific rules when analyzing the word "shall" in a statute. Our Supreme Court has previously held that when "determin[ing] whether a 'shall' in a statute should be understood as directory or mandatory," courts should consider the following four factors: "'(1) [the] legislative context and history; (2) [the] substantive effect on a party's rights versus merely form or procedural effect; (3) the existence or nonexistence of consequences for noncompliance; and (4) the subject matter of the statutory provisions, *e.g.*, elections or notice on charges for driving under the influence.' [Citation omitted.]" *Ambrosier v. Brownback*, 304 Kan. 907, 912, 375 P.3d 1007 (2016).

K.A.R. 30-7-75, in its entirety, states:

"Within 15 days after notification of the request for fair hearing the agency shall furnish the appellant and the administrative hearings section with a summary setting forth the following information:
"(a) Name and address of the appellant;
"(b) a summary statement concerning why the appellant is filing a request for a fair hearing;
"(c) a brief chronological summary of the agency's action in relationship to the appellant's request for a fair hearing;
"(d) a statement of the basis of the agency's decision;
"(e) a citation of the applicable policies relied upon by the agency;
"(f) a copy of the notice which notified appellant of the decision in question;
"(g) applicable correspondence; and
"(h) the name and title of the person or persons who will represent the agency at the hearing. The effective date of this regulation shall be July 1, 1991."

Clearly, there are no negative words requiring that the filing of the appeal summary be done at no other time than that designated. There are no penalties that a presiding officer can impose on DCF for failing to comply with K.A.R. 30-7-75's 15-day time limit to file an appeal summary. Furthermore, although there seems to be little agency history concerning the creation of K.A.R. 30-7-75's time limit, DCF placed K.A.R. 30-7-75 within a section on other appeal and hearing procedures. With this in mind, K.A.R. 30-7-75 has no substantive effect on parties' rights. Very clearly, the fact that no negative language exists, no penalties exist, and no substantive rights exist weighs in favor of this court finding K.A.R. 30-7-75's 15-day time limit is directory.

Next, as it relates to the subject matter of K.A.R. 30-7-75, for all intents and purposes, an agency summary provides the appellant with no new information. Clearly, appellants should know their own name and address, why they requested a fair hearing, and the agency actions thus far as stated under subsections (a)-(c). Further, the information DCF must include in its appeal summary as required under subsections (d)-(g) would have been made known to appellants when they were served with DCF's notice of perpetrator of sexual abuse determination. K.A.R. 30-46-15 states that this notice "shall set forth the reasons for the finding and shall inform the substantiated perpetrator of the perpetrator's right to appeal the decision." Davis does not complain that DCF's notice finding him a perpetrator of sexual abuse was deficient. Moreover, based upon DCF's standardized "Notice of Department Findings" form, which it sent to Davis as notice he had been found a substantiated perpetrator of sexual abuse, Davis would have at the very least know the name of the caseworker who had managed his case. This means that Davis would at the very least known the name of at least one person likely to represent DCF as stated under subsection (h).

Under K.A.R. 30-7-75, DCF must send the appeal summary to both the appellant and the administrative hearings sections. Given that the appellant should know most all

13

the information in the appeal summary, it is readily apparent that the primary purpose of the appeal summary is to apprise the administrative hearings section about the important information of the case thus far. This differentiates the subject matter of K.A.R. 30-7-75 from the subject matter of rules that our Supreme Court has previously held support finding the use of the word "shall" is mandatory. This is because those rules, e.g., rules on notice of time and date of election and rules on notice to consent to DUI testing, involved making appellants aware of some right. See *State v. Raschke*, 289 Kan. 911, 918, 219 P.3d 481 (2009). As a result, K.A.R. 30-7-75 does not involve a subject matter that tends to support that the use of "shall" within the provision is mandatory. Instead, as evidenced by its name "appeal *summary*," K.A.R. 30-7-75 merely directs DCF to recount certain information about a case to the appellant and the administrative hearings section.

Therefore, to summarize, K.A.R. 30-7-75 is simply a procedural rule for which there are no consequences for violating. There are no negative words requiring that the filing of the appeal summary be done at no other time than that designated. Moreover, most importantly, K.A.R. 30-7-75's subject matter—the content of the appeal summary— is information that an appellant should know. For these reasons, it is clear that K.A.R. 30-7-75's 15-day time limit is directory. In turn, Davis' argument that DCF lost jurisdiction by filing its appeal summary one day out of time is incorrect.

Second, Davis' argument that he is entitled to reversal of DCF's perpetrator of sexual abuse determination because the presiding officer failed to provide him with notice that he was converting his prehearing conference proceeding to a summary judgment proceeding is based upon misinterpreting K.S.A. 77-506—KAPA's conversion statute. Briefly, K.S.A. 77-506(a)(1) states that "the presiding officer or other state agency official responsible for the proceeding: (1) [m]ay convert the proceeding to another type of state agency proceeding if the conversion is appropriate, is in the public interest and does not substantially prejudice the rights of any party." K.S.A. 77-506(b) states: "A conversion of a proceeding of one type to a proceeding of another type may be

14

effected only upon notice to all parties to the original proceeding." Only after a proceeding is converted from one type to another type, shall the presiding officer or other agency official "[g]ive such additional notice to parties or other persons as is necessary to satisfy the requirements pertaining to those proceedings." K.S.A. 77-506(e)(1).

Davis' entire argument is that the presiding officer failed to comply with the notice requirements of K.S.A. 77-506 because nothing in the record of his case showed "any notice being sent to [him] advising him that the agency [was] converting the proceeding pursuant to [the statute]." Even so, the plain language of K.S.A. 77-506(b) does not state what exact material must be included in this notice. Also, no provision within K.S.A. 77-506 provides a party with an outlet to challenge a presiding officer's decision to convert a proceeding.

Regardless, in this case, after DCF moved for summary judgment, the presiding officer notified Davis by letter that he would be ruling on DCF's summary judgment motion. The presiding officer never used the word "conversion" in this letter. Still, by sending this letter, the presiding officer provided Davis with notice that he may dispense with the case by summary judgment without ever holding a prehearing conference depending upon the persuasiveness of Davis' response. As a result, this letter put Davis on notice that his case was no longer set for prehearing conference proceedings; instead, his case was now set for summary judgment proceedings.

Consequently, the presiding officer complied with the plain language of K.S.A. 77-506(b) because he provided notice to Davis that his proceeding was being converted from one type to another type. Besides, even if this court were to entertain an argument that the presiding officer did not technically comply with K.S.A. 77-506(b)'s notice requirement, it is readily apparent that the presiding officer substantially complied with the notice requirement by sending the letter to Davis telling Davis that he would now consider DCF's motion for summary judgment.

15

In any event, in his brief, Davis has not explained how a lack of notice explicitly containing language stating that his case had been converted from a prehearing conference proceeding to a summary judgment proceeding resulted in prejudice. Davis does not allege that the summary judgment proceedings caught him by surprise; instead, his arguments have always been that he was entitled to the prehearing conference based upon the trial court's original remand order. Indeed, it appears that Davis assumes that any procedural error, regardless of the magnitude, automatically entitles him to reversal of DCF's perpetrator of sexual abuse determination. Yet, this is simply not the case. Once again, this court's review under the KJRA must give "due account . . . [to] the rule of harmless error." K.S.A. 2016 Supp. 77-621(e). Here, if there was any error in failing to follow K.S.A. 77-506(b)'s notice requirements, the error was harmless because (1) Davis received adequate notice as evidenced by the fact he filed a response to the summary judgment motion, and (2) Davis has not alleged the lack of notice resulted in prejudice.

Third, Davis' argument that he is entitled to reversal of DCF's perpetrator of sexual abuse determination because the presiding officer was bound by the trial court's order remanding his case to DCF for a prehearing conference ignores the trial court's own statements while remanding the case. To review, when the trial court remanded for a prehearing conference, it explicitly recognized that Davis' ongoing criminal case "could affect the outcome of the administrative process." Upon remand, the presiding officer decided to stay Davis' administrative case pending the result of his criminal case. In the end, it was Davis' convictions of two counts of aggravated indecent liberties with a child in his criminal case that caused DCF to move for summary judgment. Accordingly, it is readily apparent that it was the outcome of Davis' criminal case—a consideration which the trial court calculated into its remand order—that resulted in Davis not having a prehearing conference. In turn, the presiding officer did not violate the trial court's remand order.

16

Moreover, as evidenced in the preceding paragraphs, K.S.A. 77-506 provides agencies with an outlet to convert proceedings of one type to another type. Therefore, the presiding officer could use K.S.A. 77-506 to convert Davis' case from a prehearing conference proceeding to a summary judgment proceeding without violating the remand order.

*Mootness Arguments*

Finally, turning our attention to Davis' mootness arguments, it is readily apparent that these arguments are also without merit.

"An appeal will not be dismissed for mootness unless it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights." *Wiechman v. Huddleston*, 304 Kan. 80, 84, 370 P.3d 1194 (2016). Once more, Davis' two mootness arguments are as follows: (1) that DCF's case against him is moot because Curley no longer works for DCF; and (2) that DCF's case against him is moot because J.D. is legally an adult.

Concerning his argument about Curley, Davis cites two cases to support his proposition that when a caseworker who made the perpetrator of sexual abuse determination no longer works for DCF, DCF's case against the perpetrator of sexual abuse is moot. Those cases are *Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S. Ct. 1055, 137 L. Ed. 2d 170 (1997), and *Moorhouse v. City of Wichita*, 259 Kan. 570, 913 P.2d 172 (1996). Nevertheless, neither of these cases supports Davis' argument as they both involve challenges brought by governments that lawsuits filed against them by former employees became moot once employees obtained employment elsewhere, i.e., the governments argued that the employees no longer had standing to sue. *Arizonans*, 520 U.S. at 69; *Moorhouse*, 259 Kan. at 575. Curley is not suing Davis; DCF has brought this

17

action against Davis. Thus, the fact that Curley is no longer employed at DCF is irrelevant.

Concerning Davis' argument about J.D. now being legally an adult, Davis asserts that because J.D. "will never again be subject to any court holding as [] part of a child abuse investigation," DCF's case against him is moot. Accordingly, it seems that Davis believes that because J.D. is no longer a minor, DCF no longer has a basis to find him a perpetrator of sexual abuse. Clearly, Davis has misunderstood the purpose of DCF's case against him. The purpose of finding him a substantiated perpetrator of sexual abuse is to protect all current and future children in the state of Kansas from him. This is achieved by placing Davis' name on the child abuse and neglect central registry, which in turn bans him from residing, working, or volunteering in a child care facility. See K.S.A. 2016 Supp. 65-516(a)(3). As a result, the fact J.D. is no longer a minor is irrelevant. Therefore, DCF's case against Davis is not moot.

*Conclusion*

To summarize, none of Davis' procedural arguments or mootness arguments are persuasive. Moreover, outside of making the bald assertion that he was wrongly convicted of the two counts of aggravated indecent liberties with a child, Davis has not provided any evidence that undermines the presiding officer's summary judgment ruling. Appellants have the burden of submitting a record on appeal that supports their claims of error. See *Friedman*, 296 Kan. at 644-45. On top of this, Davis does not actually challenge the presiding officer's basis for his summary judgment ruling, which was that because he was found guilty beyond a reasonable doubt of two counts of aggravated indecent liberties with J.D., DCF's determination that he was a perpetrator of sexual abuse based upon sexual contact with J.D. was supported by clear and convincing evidence.

In short, by not challenging the presiding officer's actual reason for granting summary judgment on appeal, Davis has abandoned any argument he may have had challenging that ruling. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011) (holding an issue not briefed by an appellant is abandoned). At any rate, because beyond a reasonable doubt is a higher burden of proof than clear and convincing evidence, the evidence used to convict him at his trial was sufficient to establish he was a perpetrator of sexual abuse by clear and convincing evidence. Consequently, this court affirms the decision of the trial court.

Affirmed.